**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Courtney Joseph REYNOLDS, Appellant.**

Superior Court of Pennsylvania.

Submitted June 16, 2003.

Filed Oct. 27, 2003.

724

Anthony A. Logue, Erie, for appellant.

Bradley H. Foulk, Asst. Dist. Atty., Erie, for Com., appellee.

BEFORE: HUDOCK, BENDER, and TAMILIA, JJ.

OPINION BY BENDER, J.:

¶ 1 Courtney Joseph Reynolds appeals from the October 21, 2002 judgment of sentence[1] imposed following his convic-

1. Appellant purports to take this appeal from the October 29, 2002 order denying his post

tions on two counts of recklessly endangering another person (REAP), two counts of simple assault, and one count each of terroristic threats and disorderly conduct. We affirm.

¶ 2 The Honorable William R. Cunningham, who presided over trial and imposed sentence in this case, set forth the following factual history in his Pa.R.A.P. 1925(a) opinion:

On February 23, 2002 Appellant and his spouse were patrons at Sherlock's Tavern when one of the victims, Mr. Tyson Baker ["Baker"], made a disparaging remark about Appellant's spouse. Appellant responded by threatening to kill [Baker], indicating he had a gun. Subsequently, Appellant and his spouse were removed from the premises by tavern security. As [Baker] and Mr. Daniel Miner ["Miner"] exited the tavern shortly thereafter, they were confronted by the Appellant. After a brief verbal exchange, Appellant pulled a 9 mm semi-automatic handgun out of his pants and pointed it at [Baker's] face. [Baker] grabbed the gun and [Miner] tackled both [Baker] and Appellant forcing them to the ground. A struggle followed and eventually a bystander stepped upon Appellant's hand holding the gun. [Miner] then allowed Appellant to get up. Upon regaining his feet, Appellant again brandished his weapon at both [Baker] and [Miner] and threatened them before running off.

Trial Court Opinion (T.C.O.), 1/31/03, at 1–2. Appellant was charged with one count each of possessing instruments of crime (18 Pa.C.S. § 907(b)) and disorderly conduct (18 Pa.C.S. § 5503(a)(1)), and two counts each of REAP (18 Pa.C.S. § 2705), terroristic threats (18 Pa.C.S. § 2706(a)(1)), and simple assault (18 Pa. C.S. § 2701(a)(3)). Appellant proceeded to a jury trial on September 12, 2002. On September 13, 2002, the jury returned a verdict of guilty on all counts except for possessing instruments of crime and the one count of terroristic threats as to Miner.

¶ 3 On October 21, 2002, the trial court sentenced Appellant to an aggregate of twelve to forty-six months' imprisonment in a state correctional institution with a consecutive term of seven years' probation. Specifically, the sentence of imprisonment was imposed on two particular counts: terroristic threats as to Baker and simple assault as to Baker.

¶ 4 On October 29, 2002, Appellant filed a timely post-sentence motion, in which he properly consolidated all of his requests for relief, which included (1) a motion for judgment of acquittal, arrest of judgment, and/or new trial; and (2) a motion for reconsideration of sentence. *See* Pa. R.Crim.P. 720(A)(1), (B)(1)(a). On the same date, the trial court denied Appellant's post sentence motion. On November 7, 2002, Appellant filed a timely notice of appeal, which is now before us.

¶ 5 Appellant raises four issues in this appeal, which we shall address in the order presented. In his first issue, Appellant argues the evidence was insufficient to sustain his convictions because the Commonwealth allegedly failed to establish that Appellant did not act in self-defense. Appellant's brief at 17.

The standard we apply in reviewing the sufficiency of the evidence is whether

___

sentence motion. Technically, Appellant's appeal is from the judgment of sentence entered on October 21, 2002, which became final for purposes of appeal on the date the trial court entered the order denying Appellant's post sentence motion. *See* Pa.R.Crim.P. 720(B)(3)(a) & cmt.; *Commonwealth v. Sullivan,* 820 A.2d 795, 798 n. 1 (Pa.Super.2003); *Commonwealth v. Braykovich,* 444 Pa.Super. 397, 664 A.2d 133, 138 (1995).

viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Troy,* 2003 PA Super 340, 832 A.2d 1089, 1092 (2003) (citations omitted). We emphasize that it is not our role, as an appellate court, to substitute our judgment for that of the fact-finder. *Commonwealth v. Lutes,* 793 A.2d 949, 960 (Pa.Super.2002). "It is the function of the jury to evaluate evidence adduced at trial to reach a determination as to the facts, and where the verdict is based on substantial, if conflicting evidence, it is conclusive on appeal." *Id.* at 960–61.

¶ 6 Appellant's argument on this issue is sparse, and he merely contends, in a general fashion, that because the Commonwealth allegedly failed to disprove that he acted in self-defense, the evidence was insufficient to sustain *all* of his convictions. However, Appellant does not explain how the Commonwealth's alleged failure to disprove self-defense relates to his convictions other than simple assault, which include REAP, terroristic threats, and disorderly conduct. Nevertheless, despite the paucity of Appellant's argument, we will examine the sufficiency of the evidence vis-à-vis all of these offenses, followed by a discussion of self-defense.

¶ 7 We conclude initially that the evidence was sufficient to sustain all of Appellant's convictions. Appellant was convicted of two counts of simple assault, one as to Baker and one as to Miner, pursuant to 18 Pa.C.S. § 2701(a)(3), which indicates that a person commits simple assault when he "attempts by physical menace to put another in fear of imminent serious bodily injury." "[T]he act of pointing a gun at another person [can] constitute simple assault as an attempt by physical menace to put another in fear of imminent serious bodily injury." *In re Maloney,* 431 Pa.Super. 321, 636 A.2d 671, 674 (1994) (citations and internal quotation marks omitted) (concluding simple assault under section 2701(a)(3) established where driver pointed gun at another driver and said, "Get the f* * * out of here").

> In *Commonwealth v. Little,* [418 Pa.Super. 558, 614 A.2d 1146 (1992)], this court formally adopted the trial court's analysis regarding sufficiency of the evidence to prove simple assault by physical menace. The elements which must be proven are intentionally placing another in fear of imminent serious bodily injury through the use of menacing or frightening activity. *Id.* at 1151–1155. Intent can be proven by circumstantial evidence and may be inferred from the defendant's conduct under the attendant circumstances. *Id.* at 1154.

*Commonwealth v. Repko,* 817 A.2d 549, 554 (Pa.Super.2003).

¶ 8 We examined the entire trial transcript in the light most favorable to the Commonwealth and conclude that the Commonwealth presented sufficient evidence to establish simple assault, against Baker and Miner, under section 2701(a)(3). While in the bar, during the verbal altercation between Appellant, Baker, and Miner, both Miner and another witness heard Appellant say to Baker that he had a gun and that he would "stick [his] gun down [Baker's] f* * * * * * throat" or "blow [Baker's] f* * * * * * head off." N.T. Trial, 9/12/02, at 32–33, 44. Upon discovering that Appellant had a gun, the bouncer removed Appellant and his wife from the bar. *Id.* at 19, 33. Approximately five to ten minutes after Appellant and his wife left the bar, Baker and Miner exited the bar and encountered Appellant and his wife again. *Id.* at 21, 34. The verbal argument recommenced and escalated into a physical altercation. Specifically, Appellant pulled out his gun, pointed it to Baker's face, and threatened Baker. *Id.* at 21, 34. Baker tried to grab the gun and was struggling with Appellant, when Miner tackled them both to the ground. *Id.* at 21, 34. The three men wrestled on the ground for control of the gun. *Id.* at 21–22, 35, 51. While on the ground, a bystander stepped on the hand holding the gun, presumably Appellant's hand. *Id.* at 51. The three men stood up and Appellant, who was still holding the gun, pointed the gun at both Miner and Baker and said, according to the bystander, "don't f* * * with me[,] I got a gun" and "I'll kill you mother f* * * * * *." *Id.* at 36, 51. After threatening Miner and Baker with the gun, Appellant ran off into a back alley. *Id.* at 36. Both Baker and Miner testified that they were afraid for their lives. *Id.* at 22, 41. Appellant's conduct, *i.e.,* pointing the gun at the victims and threatening their lives, evidences his intent to place the victims "in fear of imminent serious bodily injury through the use of menacing or frightening activity." *Repko,* 817 A.2d at 554. Accordingly, the evidence was sufficient to establish the elements of simple assault by physical menace pursuant to section 2701(a)(3).

¶ 9 Appellant was also convicted of two counts of REAP, under 18 Pa.C.S. § 2705, which states that "[a] person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. "Thus, the crime requires (1) a mens rea recklessness, (2) an actus reus some 'conduct,' (3) causation 'which places,' and (4) the achievement of a particular result 'danger,' to another person, of death or serious bodily injury." *Commonwealth v. Trowbridge,* 261 Pa.Super. 109, 395 A.2d 1337, 1340 (1978). *See also Commonwealth v. Klein,* 795 A.2d 424, 427–28 (Pa.Super.2002) (citations omitted) (indicating the "mens rea for recklessly endangering another person is a conscious disregard of a known risk of death or great bodily harm to another person" and "serious bodily injury" is "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ"). "This statutory provision was directed against reckless conduct entailing a serious risk to life or limb out of proportion to any utility the conduct might have." *Commonwealth v. Rivera,* 349 Pa.Super. 303, 503 A.2d 11, 12 (1985) *(en banc ).*

¶ 10 The crime of REAP "is a crime of assault which requires the 'creation of danger.' " *Id.* (citation omitted). "As such, ... there must be an 'actual

present ability to inflict harm.'" *Id.* (citation omitted). In *Trowbridge,* we explained this risk of actual danger as follows:

By requiring the creation of danger, we think it is plain under § 2705 that the mere apparent ability to inflict harm is not sufficient. Danger, and not merely the apprehension of danger, must be created. Therefore, we think that § 2705 retains the common law assault requirement of actual present ability to inflict harm. *See also Commonwealth v. Goosby,* 251 Pa.Super. 326, 380 A.2d 802 (1977) (where defendant pointed gun and pulled trigger, but one live cartridge in the gun misfired, there is sufficient evidence to convict for recklessly endangering).

*Trowbridge,* 395 A.2d at 1340 (footnotes omitted).

¶ 11 At trial, Appellant argued that the gun was unloaded or incapable of firing during the incident. The issue of whether the gun was loaded is relevant to our discussion of the sufficiency of the evidence to sustain his convictions of REAP because, as a general matter, the mere pointing of an unloaded gun, without more, does not constitute REAP. *See, e.g., id.* at 1340 n. 2 (concluding that defendant's pointing of an unloaded BB gun at two police officers who were standing by their cars in the middle of a deserted street, did not create a danger of death or serious bodily harm and, therefore, did not constitute REAP); *Commonwealth v. Baker,* 287 Pa.Super. 39, 429 A.2d 709, 710 (1981) (concluding evidence insufficient to establish REAP where defendant pointed unloaded gun at participants in bar brawl in the bar's parking lot late at night when there was minimal traffic and little risk of danger); *Commonwealth v. Gouse,* 287 Pa.Super. 120, 429 A.2d 1129, 1130 (1981) (concluding evidence insufficient to sustain

REAP conviction where, during argument, defendant pointed unloaded gun at two men in stationary vehicle for less than one minute).

¶ 12 However, even if a defendant's gun is unloaded, the surrounding circumstances may be sufficient to sustain a conviction of REAP. As we explained in *Trowbridge:*

From this discussion we do not mean to say that there are no circumstances under which the pointing of an unloaded gun can create a danger of death or serious bodily injury, albeit not from the projectile which would be fired if it were loaded. We think such a danger could exist where the actor points an unloaded gun and the resulting fear or apprehension of danger itself creates an actual danger of death or serious bodily harm to others, such as where a gun is pointed at a person driving a passenger-filled car at fifty miles per hour on a public highway, since the requisite danger comes from the loss of vehicular control in such a panic situation. .... *See also Commonwealth v. Holguin,* ... [254 Pa.Super.295,] 385 A.2d 1346 ([Pa.Super.] 1978) (pointing pistol into crowded bar creates significant risk that someone may retaliate with gunfire).

*Trowbridge,* 395 A.2d at 1341 n. 14. *See also Gouse,* 429 A.2d at 1131 (stating that some circumstances surrounding pointing of unloaded gun may be inherently dangerous such that "the required common law element of actual danger of harm was proven despite the fact that the gun was unloaded").

¶ 13 In *Rivera,* we revisited our decisions in *Trowbridge* and its progeny, which established the general rule that a defendant could not be guilty of REAP by pointing a gun at someone unless it could also be established that the gun was loaded. *Rivera,* 503 A.2d at 12. In *Rivera,* we

found the evidence sufficient to establish REAP where the defendant broke into the victims' home, tied-up and robbed the victims, and threatened the victims with death or serious injury by shooting. *Id.* We concluded that the robbers placed the victims in a situation in which the risk of death or serious bodily injury was real, not merely apparent and, therefore, the Commonwealth did not need to prove that a bullet was in the chamber of the gun used by the defendant. *Id.* at 12–13.

¶ 14 In the instant case, we conclude that the Commonwealth presented sufficient evidence to sustain Appellant's convictions on two counts of REAP. First, despite Appellant's testimony to the contrary, the Commonwealth presented evidence that created the inference that at least one bullet was in the chamber during the incident. Specifically, Officer Robert Borland testified that, upon arriving on the scene, he discovered the gun in Appellant's van. N.T. at 57. The magazine was near the gun, but not in it, and the magazine was empty. *Id.* Officer Daniel Morris testified that, shortly after arriving on the scene, he retrieved the gun from Appellant's glove box. *Id.* at 58. He testified that the magazine was not in the gun, but a single 9 mm round was inside the butt of the gun (where the magazine would have been if it were in the gun). *Id.* at 59. When Officer Morris picked up the gun, he heard the round rattle loosely in the butt of the gun. *Id.* Officer Morris testified on direct examination as follows:

Q ... if somebody were handling this weapon, and there was no magazine in it and they were handling it in this nature, would it be possible for that 9 mm round to stay in there or would it fall out?

A Not unless it was in the chamber.

Q Otherwise it would fall out?

A That's correct.

*Id.* at 59–60. Officer Morris demonstrated to the jury that the loose round in the butt of the gun, as he found it, fell to the ground when picked up, thereby indicating that the bullet could not have been in that part of the gun when Appellant was pointing it at Baker and Miner. *Id.* at 64. The reasonable inference is that the bullet was loaded in the chamber of the gun when Appellant was pointing it and, after the incident, Appellant de-chambered the bullet into the butt of the gun. Accordingly, the Commonwealth presented evidence to establish that a bullet was in the gun and it was likely loaded in the chamber when Appellant was pointing it at Baker and Miner while threatening their lives. Accordingly, the line of cases standing for the general proposition that a defendant cannot be convicted of REAP where he uses an unloaded gun, absent other circumstances that would create actual danger, is not applicable to the instant case where the Commonwealth presented evidence creating the reasonable inference that the gun in this case was loaded at all relevant times.

¶ 15 In any event, we further conclude that, even if the gun were not loaded, the circumstances surrounding Appellant's actions presented an actual, foreseeable, risk of danger. As in *Holguin*, Appellant acted in a bar where other patrons and employees were present. Indeed, the bouncer removed Appellant from the bar upon learning that he had a gun. Moreover, after Appellant pointed a gun at Baker's forehead for the first time, Miner tackled both men onto the ground and the three of them fought for the gun. A bystander stepped on the arm holding the gun, indicating that at least one other person involved himself in the affray. The circumstances were such that someone else with a gun could have retaliated. *See Holguin.* Accordingly, the surrounding circum-

stances were such that Appellant created an actual danger by pointing the gun, whether or not it was actually loaded and capable of firing. *See Rivera*, 503 A.2d at 12–13; *Trowbridge*, 395 A.2d at 1341 n. 14. In sum, we find the evidence sufficient to sustain Appellant's convictions on two counts of REAP.

¶ 16 Appellant was also convicted on one count of terroristic threats, as to Baker,[2] under 18 Pa.C.S. § 2706(a)(1), which provides that "[a] person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to ... commit any crime of violence with intent to terrorize another." 18 Pa.C.S. § 2706(a)(1). "[T]he Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror." *Commonwealth v. Tizer*, 454 Pa.Super. 1, 684 A.2d 597, 600 (1996). "Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense." *In re J.H.*, 797 A.2d 260, 262 (Pa.Super.2002). "Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." *Tizer*, 684 A.2d at 600.

¶ 17 Section 2706 "is not meant to penalize mere spur-of-the-moment threats which result from anger." *In re J.H.*, 797 A.2d at 262–63. *See also Tizer*, 684 A.2d at 600 (indicating statute is not meant to penalize spur-of-the-moment threats arising out of anger during a dispute); *Commonwealth v. Anneski*, 362 Pa.Super. 580, 525 A.2d 373 (1987) (concluding where defendant threatened to re-

trieve and use gun against her neighbor during argument, in which the neighbor also threatened to run over defendant's children with her car, did not constitute a terroristic threat because circumstances of the exchange suggested spur-of-the-moment threat made during heated exchange and defendant lacked a settled purpose to terrorize her neighbor). However, "[b]eing angry does not render a person incapable of forming the intent to terrorize." *In re J.H.*, 797 A.2d at 263. "[T]his Court must consider the totality of circumstances to determine whether the threat was a result of a heated verbal exchange or confrontation." *Id.*

¶ 18 We conclude that the totality of the circumstances present sufficient evidence to sustain Appellant's conviction on the one count of terroristic threats as to Baker. As noted above, Appellant threatened Baker's life verbally while in the bar and then, instead of just leaving the premises, Appellant confronted Baker outside of the bar. During the incident outside of the bar, Appellant threatened Baker again and pointed the gun to Baker's face. As the trial court noted, Appellant's initial threat was in response to Baker calling Appellant's wife a "troll." The circumstances were not similar to those in *Anneski* where two neighbors were threatening each other with equally violent acts during a heated argument. Accordingly, the evidence was sufficient to sustain Appellant's conviction on one count of terroristic threats as to Baker.

¶ 19 Finally, Appellant was convicted of disorderly conduct pursuant to 18 Pa.C.S. § 5503(a)(1), which indicates that "[a] person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he

---

**2.** The jury found Appellant not guilty on the count of terroristic threats as to Miner.

... engages in fighting or threatening, or in violent or tumultuous behavior[.]" 18 Pa.C.S. § 5503(a)(1). "'Fighting words' will support a conviction for disorderly conduct." *Lutes*, 793 A.2d at 962. "The reckless creation of a risk of public alarm, annoyance or inconvenience is as criminal as actually causing such sentiments." *Id.* The evidence in the instant case was sufficient to establish that Appellant, acting in a public place, threatened the life of his victims with a gun, thereby actually creating a risk of public alarm.

▓▓▓▓ ¶ 20 As noted above, Appellant claims the Commonwealth failed to disprove that he acted in self-defense and, therefore, he argues that the evidence was insufficient to sustain his convictions. With regard to self-defense, we note the following:

The use of force against a person is justified when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person. *See* 18 Pa.C.S. § 505(a). When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt. While there is no burden on a defendant to prove the claim, before the defense is properly at issue at trial, there must be some evidence, from whatever source, to justify a finding of self-defense. If there is any evidence that will support the claim, then the issue is properly before the fact finder.

\* \* \* \*

Finally, we note that the Commonwealth cannot sustain its burden of proof solely on the fact finder's disbelief of the defendant's testimony. The "disbelief of a denial does not, taken alone, afford affirmative proof that the denied fact existed so as to satisfy a proponent's burden of proving that fact." The trial court's statement that it did not believe Appellant's testimony is no substitute for the proof the Commonwealth was required to provide to disprove the self-defense claim.

*Commonwealth v. Torres*, 564 Pa. 219, 766 A.2d 342, 344–45 (2001) (case citations omitted). The Commonwealth presented evidence by way of testimony of the two victims, the bouncer at the bar, an eyewitness to the events outside of the bar, and the two police officers who arrived at the scene. The jury was entitled to believe the testimony of the Commonwealth's witnesses and disbelieve the testimony of Appellant and his wife, who painted a picture of aggression by the two victims. The testimony of the Commonwealth's witnesses, on the other hand, painted a picture of Appellant pulling a gun on the victims, holding the gun to the victims' faces, and threatening their lives, all in response to a verbal argument that began when Baker called Appellant's wife a "troll." The Commonwealth's evidence established, beyond a reasonable doubt, that Appellant did not act in self-defense, but instead threatened the victims with a gun after one of the victims insulted his wife. Such circumstances are not indicative of self-defense. *See Torres*, 766 A.2d at 344.

▓▓▓▓ ¶ 21 In his second issue, Appellant argues that the verdicts were against the weight of the evidence and, therefore, the trial court erred by refusing to grant a new trial.

Appellate review of a weight claim is a review of the [judge's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. [A] new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the

award of a new trial is imperative so that right may be given another opportunity to prevail.

*Commonwealth v. Causey,* 2003 PA Super 351, 833 A.2d 165, 173–74 (2003) (citations and quotation marks omitted).

¶ 22 Appellant essentially argues that the jury should have believed his testimony and the testimony of his wife, rather than the testimony of the Commonwealth witnesses. As noted above, the jury is free to disbelieve all of the defense's testimony, and is free to believe all of the testimony of the Commonwealth's witnesses; it is also within the province of the jury, as the arbiter of the witnesses' credibility, to resolve any conflicts in the evidence. *See Commonwealth v. Watkins,* —— Pa. ——, —— A.2d ——, ——, 2003 WL 21305268, *6 (2003). Appellant provides no basis upon which we can conclude that the trial court abused its discretion by determining that the verdict was not against the weight of the evidence, and Appellant has failed to convince us that the verdict was so contrary to the evidence as to shock one's sense of justice.

¶ 23 In his third issue, Appellant argues that trial counsel provided ineffective assistance of counsel by requesting a jury instruction of "Simple Assault by Mutual Affray," thereby "eroding the theory of self-defense." Appellant's brief at 14. Appellant failed to raise this issue in his statement of matters complained of on appeal, which the trial court had ordered pursuant to Pa.R.A.P. 1925(b). Accordingly, the issue is waived for purposes of this appeal. *See Commonwealth v. Lord* 553 Pa. 415, 719 A.2d 306, 309 (1998). We note that, in *Commonwealth v. Grant,* our Supreme Court announced the general rule that "a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review" and, therefore, "any ineffectiveness claim will be waived only after a petitioner has had the opportunity to raise that claim on collateral review and has failed to avail himself of that opportunity." *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726, 738, (2002). However, our Supreme Court in *Grant* indicated that its holding applies only to "cases on direct appeal where the issue of ineffectiveness was properly raised and presented." *Commonwealth v. Duffy,* 2003 PA Super 341, 832 A.2d 1132, 1136 n.2 (2003) (quoting *Grant,* 813 A.2d at 738). In *Duffy,* the appellant waived his ineffective assistance of counsel claim on direct appeal by failing to include it in his Rule 1925(b) statement and, therefore, we held that the general rule announced in *Grant* did not apply. *Id.* The same circumstances exist here; however, Appellant may still raise his ineffective assistance of counsel claim in a post conviction collateral relief petition, but he must layer such claim by alleging ineffectiveness of appellate counsel for failing to properly raise and present the claim, in accordance with pre-*Grant* law, in order to avoid waiver in the future. *See id.*

¶ 24 In his fourth and final issue, Appellant challenges the discretionary aspects of his sentence by arguing that his sentence is excessive and "without sufficient basis or foundation." Appellant's brief at 14.

Our standard of review in an appeal from the discretionary aspects of a sentence is well settled:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, bias or ill-will.

*Commonwealth v. Hess,* 745 A.2d 29, 30–31 (Pa.Super.2000), *quoting Commonwealth v. Burkholder,* 719 A.2d 346, 350, (Pa.Super.1998).

There is, however, no absolute right to appeal the discretionary aspects of a sentence. *Commonwealth v. Mouzon,* 571 Pa. 419, 812 A.2d 617 (2002), 42 Pa.C.S.A. § 9781, Appellate Review of Sentence (b). Rule 2119, Argument (f) of the Pennsylvania Rules of Appellate Procedure requires an appellant challenging the discretionary aspects of a sentence to "set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." Pa.R.A.P. 2119(f). Bald allegations of excessiveness are insufficient. *Mouzon, supra.* Rather, the appellant must demonstrate in this statement that a substantial question exists concerning the sentence. A substantial question exists where the statement sets forth a plausible argument that the sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing scheme. *Id.*

"The Rule 2119(f) statement must specify where the sentence falls in relation to the sentencing guidelines and what particular provision of the Code is violated (e.g. the sentence is outside the guidelines and the court did not offer any reasons either on the record or in writing, or double-counted factors already considered). Similarly, the Rule 2119(f) statement must specify what fundamental norm the sentence violates and the manner in which it violates the norm (e.g. the sentence is unreasonable or the result of prejudice because it is 500 percent greater than the extreme end of the aggravated range)." *Commonwealth v. Goggins,* 748 A.2d 721 (Pa.Super.2000) .... "Our inquiry must focus on the *reasons* for which the appeal is sought,

in contrast to the *facts* underlying the appeal, which are necessary only to decide the appeal on the merits." *Id.,* at 727.

*Commonwealth v. McNabb,* 819 A.2d 54, 55–56 (Pa.Super.2003).

¶ 25 Rather than providing a separate Rule 2119(f) statement in his brief, Appellant provides the following, which constitutes the first paragraph of the argument portion of his brief on this issue:

> Per Pa.R.A.P. 2119(f) pertaining to Statement of Reasons Relied Upon for Allowable [sic] of Appeal Regarding Sentencing Aspect, that the Court failed to offer specific reasons for said sentence and said sentence wad [sic] unreasonable and resulted in prejudice because of the extreme and of the sentencing ranges utilized by the Court.

Appellant's brief at 23. Although an appellant challenging the discretionary aspects of his sentence will typically include a separate page in his brief for the Rule 2119(f) statement, we shall consider this first paragraph in the argument portion of Appellant's brief on this issue as Appellant's Rule 2119(f) statement.

¶ 26 Although poorly constructed and replete with grammatical errors, we discern that Appellant's Rule 2119(f) statement contains a bald allegation that his sentence was excessive. Appellant fails to "specify where the sentence falls in relation to the sentencing guidelines and what particular provision of the Code is violated" and fails to "specify what fundamental norm the sentence violates and the manner in which it violates the norm." *McNabb,* 819 A.2d at 56 (quoting *Goggins, supra* ). Bald allegations of excessiveness, as presented in Appellant's Rule 2119(f) statement, do not present a substantial question for purposes of Rule 2119(f). *Id.* at 55–56 (citing *Mouzon, supra* ).

¶ 27 However, Appellant's allegation that Judge Cunningham "failed to of-

fer specific reasons for said sentence" does raise a substantial question. *Commonwealth v. Coss,* 695 A.2d 831, 834 (Pa.Super.1997). In *Coss,* we stated:

> Although a claim that the trial court failed to provide reasons for its sentence technically involves the discretionary aspects of sentencing, the trial court has no discretion in determining whether or not to place such reasons on the record. Rather, the Sentencing Code provides, in pertinent part, that "[i]n every case in which the court imposes a sentence for a felony or misdemeanor, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." 42 Pa.C.S. § 9721(b).

*Id.* (case citations omitted). Accordingly, we will proceed to review the discretionary aspects of Appellant's sentence and consider the argument he has provided on this issue.

■■■ ¶ 28 We conclude initially that Appellant's argument, that Judge Cunningham "failed to offer specific reasons" for the sentence he imposed, is without merit. Indeed, according to 42 Pa.C.S. § 9721(b), the sentencing court is required to state, in open court at the time of sentencing, the reasons for the sentence it imposed. However, "[t]his requirement can be satisfied by the trial court indicating, on the record, that it has been informed by a presentence report." *Coss,* 695 A.2d at 834. Additionally, 42 Pa.C.S. § 9725 requires the sentencing court to state its reasons for imposing a sentence of total confinement:

> The court shall impose a sentence of total confinement if, having regard to the nature and circumstances of the `crime and the history, character, and condition of the defendant, it is of the opinion that the total confinement of the defendant is necessary because:

> (1) there is undue risk that during a period of probation or partial confinement the defendant will commit another crime;

> (2) the defendant is in need of correctional treatment that can be provided most effectively by his commitment to an institution; or

> (3) a lesser sentence will depreciate the seriousness of the crime of the defendant.

42 Pa.C.S. § 9725. *See also Coss,* 695 A.2d at 834.

■■■ ¶ 29 The sentencing transcript in the instant case reveals that Judge Cunningham stated adequate reasons on the record, in open court, for the sentence he imposed. Initially, we note that Judge Cunningham indicated that he was imposing sentence within the standard range and, in fact, declined to impose the deadly weapons enhancement, even though he recognized that Appellant "clearly used a weapon to commit these offenses." *See* N.T. Sentencing, 10/21/02, at 9–10. Judge Cunningham stated that he had read the pre-sentence report. *Id.* at 7. Judge Cunningham indicated, *inter alia,* that he considered Appellant's young age, the fact he is married with a four-year old child, his extensive criminal record as a juvenile, and his history of absconding from rehabilitative programs as a juvenile. *Id.* at 7–8. Judge Cunningham also recognized the seriousness of Appellant's crimes, especially with regard to his use of a gun on the victims. *Id.* at 7. Judge Cunningham noted that the victims "weren't exactly angels in this case," but they did not pose a threat of deadly harm to Appellant and, therefore, Appellant was responsible for escalating the incident by pulling his gun on the victims. *Id.* Additionally, Judge Cunningham recognized that, at the time of the incident, Appellant's wife was pregnant, and Judge Cunningham voiced his

concern with regard to Appellant "engaging in the offense ... with a pregnant wife." *Id.* at 8. Pursuant to our review of the entire sentencing transcript, we conclude that Judge Cunningham offered sufficient reasons on the record to support the sentence he imposed.

¶ 30 Appellant also complains that Judge Cunningham failed to consider mitigating factors. Appellant's brief at 24. We disagree. As described above, Judge Cunningham did consider the fact that Appellant is young and married with a small child. Appellant also argues that Judge Cunningham should have considered Appellant's claim of self-defense as a mitigating factor. However, the jury did not accept Appellant's justification defense and, as Judge Cunningham noted at sentencing, Appellant's use of a gun to threaten two unarmed men who posed no risk of deadly harm, vitiated Appellant's claim of self-defense. Accordingly, self-defense could not have reasonably been considered as a mitigating factor at sentencing. Finally, Appellant baldly asserts that Judge Cunningham was biased against him at sentencing. Not only is this assertion wholly undeveloped, but we have read the entire sentencing transcript and could find no indicia of bias. In fact, Judge Cunningham was merciful in that he specifically declined to impose the deadly weapons enhancement to Appellant's sentence. In sum, Appellant's last issue, challenging the discretionary aspects of his sentence, is without merit.

¶ 31 For the foregoing reasons, we affirm the judgment of sentence.

¶ 32 Judgment of sentence affirmed.

¶ 33 Judge TAMILIA concurs in the result.