J-S19010-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA

v.

BRYANT GRAUBER

Appellant

:
:
:
:
:
:
:
:
:
:
:
:
:

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 1402 EDA 2018

Appeal from the Judgment of Sentence March 16, 2018
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0002687-2017

BEFORE:   LAZARUS, J., KUNSELMAN, J., and STRASSBURGER*, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED APRIL 18, 2019**

Bryant Grauber appeals from the judgment of sentence, entered in the Court of Common Pleas of Montgomery County, after he was convicted following a nonjury trial of terroristic threats,[1] simple assault,[2] possession of instruments of crime ("PIC"),[3] and harassment.[4]  Upon careful review, we affirm.

The trial court set forth the facts of this matter as follows:

On the morning of March 11, 2017, [Grauber] (who is Caucasian) visited his mother's home located at 1402 Astor Street, in Norristown, Montgomery County.  He went there with a friend to move furniture on behalf of another sibling who had moved out

---

[1] 18 Pa.C.S.A. § 2706(a)(1).

[2] 18 Pa.C.S.A. § 2701(a)(3).

[3] 18 Pa.C.S.A. § 907(a).

[4] 18 Pa.C.S.A. § 2709(a)(1).

---

\*   Retired Senior Judge assigned to the Superior Court.

from the home. After arriving, [Grauber] soon went on a violent and racially-charged tirade after learning that his 13-year[-]old sister (also Caucasian), hereinafter referred to as BW, was there in the home, in bed with her 13-year[-]old African[-]American boyfriend, hereinafter RWC. Despite the fact that RWC and BW had permission from both of their respective guardians to spend the prior night together, and the families were on good terms and [were] neighbors, [Grauber] did not approve of the minors' contact and/or relationship. More specifically, [Grauber] charged into his sister's room, and pointed a loaded gun at RWC, saying "My [N-word]." He continued, demanding of RWC, "Who are you, why the fuck are you in my sister's bed?" As BW shouted at [Grauber] not to shoot RWC, [Grauber] slapped her across the face. [Grauber's] mother then appeared at BW's doorway, at which point [Grauber] reholstered his weapon, and all parties descended to the home's living room.

Once RWC was downstairs seated on the living room couch, [Grauber] stood looming above him, shook his hand, stated his name, and told RWC that he would ["]put a hole["] in RWC's head if he ever caught him in that house again. RWC immediately fled the home, and upon arriving safely to his own home, only a few doors away, told his mother [] what had happened, and she ultimately contacted the police.

Trial Court Opinion, 9/20/18, at 1-2 (citations to record omitted).

On November 21, 2017, the trial court found Grauber guilty of the above-stated charges and, on March 16, 2018, sentenced him as follows: for terroristic threats and simple assault, two concurrent sentences of 6 to 23 months' imprisonment, followed by 3 years' probation; for PIC, five years' probation, to run concurrently to the above sentences; and no further penalty for harassment. Grauber filed a post-sentence motion seeking modification of his sentence to accommodate his employment, which the court denied by order dated April 12, 2018. Grauber filed a timely notice of appeal followed

by a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Grauber raises the following claims for our review:

> 1. Whether the evidence was insufficient as a matter of law to support a conviction for [t]erroristic [t]hreats insofar as the statement in question was conditional and thus not intended to terrorize the complaining witness within the meaning of 18 Pa.C.S. § 2706(a)(1)?
>
> 2. Whether the [c]ourt erroneously considered the [d]eadly [w]eapon [e]nhancement [u]sed (DWE-Used) [m]atrix when sentencing [] Grauber for [s]imple [a]ssault[,] notwithstanding the plain language of 204 Pa.Code § 303.10(a)(2)[,] as the result reached was absurd, i.e., adherence to the plain meaning of the Guidelines resulted in a standard range that was more severe than would have been applicable if [] Grauber had actually injured the complaining witness with the firearm?[5]
>
> 3. Whether the [c]ourt's sentence was illegal insomuch as it was based on an erroneous application of the [d]eadly [w]eapon [u]sed matrix to the charge of [t]erroristic [t]hreats as there was no evidence to suggest that a firearm was used during the relevant period of time?

Brief of Appellant, at 6-7.

Grauber first asserts that there was insufficient evidence to support his conviction for terroristic threats. Specifically, Grauber alleges that "neither pointing a firearm nor a conditional threat are [*sic*] sufficient to establish [t]erroristic [t]hreats as a matter of law." Brief of Appellant, at 9. Grauber

_____

[5] This claim is waived for failure to preserve it in the trial court. **See** Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). While Grauber filed a post-sentence motion to reconsider his sentence, the sole relief sought in that motion related to work release. Specifically, Grauber requested "that the Court [] reconsider its judgment of sentence in that participation in the work release program will frustrate Mr. Grauber's employment [and] will likely lead to his termination." Post-Sentence Motion, 3/23/18, at ¶ 6.

claims that his act of pointing a gun at RWC's head and referring to him by a racial slur is "properly characterized as a spur-of-the-moment reaction to an angering situation" and did not evince criminal intent to terrorize. *Id.* at 12. He further asserts that the act of pointing a gun, without more, is insufficient to establish terroristic threats. Finally, Grauber posits that a "conditional" threat such as the one he uttered in the living room, "removes any prospect of immediacy or even of certainty" and is insufficient to establish the offense. Brief of Appellant, at 16. For the following reasons, Grauber is entitled to no relief.

A claim challenging the sufficiency of the evidence is a question of law; as such, our standard of review is *de novo*, and our scope of review is plenary. ***Commonwealth v. Neysmith***, 192 A.3d 184, 189 (Pa. Super. 2018). When reviewing a sufficiency claim, an appellate court is required to view the evidence in the light most favorable to the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). The Commonwealth may sustain its burden by wholly circumstantial evidence. ***Commonwealth v. Olsen***, 82 A.3d 1041, 1046 (Pa. Super. 2013).

A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to commit any crime of violence with intent to terrorize another. 18 Pa.C.S.A. § 2706(a)(1). For purposes of this offense, the term "communicates" means to convey "in person or by written or electronic means[.]" 18 Pa.C.S.A. § 2706(e). Whether

the person threatened actually believes the threat will be carried out is irrelevant, as such a factor is not an element of the offense. ***Commonwealth v. Reynolds***, 835 A.2d 720, 730 (Pa. Super. 2003). Rather, "the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." ***In re B.R.***, 732 A.2d 633, 636 (Pa. Super. 1999).

> Section 2706 "is not meant to penalize mere spur-of-the-moment threats which result from anger." ***In re J.H.***, 797 A.2d [260,] 262–63 [(Pa. Super. 2002)]. ***See also*** [***Commonwealth v.***] ***Tizer***, 684 A.2d [597,] 600 [(Pa. Super. 1996)] (indicating statute is not meant to penalize spur-of-the-moment threats arising out of anger during a dispute); ***Commonwealth v. Anneski***, [] 525 A.2d 373 ([Pa. Super.] 1987) (concluding where defendant threatened to retrieve and use gun against her neighbor during argument, in which the neighbor also threatened to run over defendant's children with her car, did not constitute a terroristic threat because circumstances of the exchange suggested spur-of-the-moment threat made during heated exchange and defendant lacked a settled purpose to terrorize her neighbor). However, "[b]eing angry does not render a person incapable of forming the intent to terrorize." ***In re J.H.***, 797 A.2d at 263. "[T]his Court must consider the totality of circumstances to determine whether the threat was a result of a heated verbal exchange or confrontation." ***Id.***

***Reynolds***, 835 A.2d at 730.

Here, the totality of the circumstances, viewed in the light most favorable to the Commonwealth as verdict-winner, ***Widmer***, ***supra***, supports a finding that Grauber committed the offense of terroristic threats. Grauber's actions and words, both upstairs in BW's bedroom and downstairs in the living room, directly communicated a threat to shoot RWC. First, Grauber, whom RWC had never met, barged into BW's bedroom, directed a racial epithet

toward RWC, and, exhibiting an "angry smirk," N.T. Trial, 11/21/17, at 20, pointed a loaded gun at RWC's head. Then, after the parties descended to the living room at the request of Grauber and BW's mother, Grauber verbally threatened RWC, saying: "If I ever catch you in my house again, I'm going to put a hole in your head."[6] *Id.*

Grauber's threatening words and actions were not made in the context of a dispute, argument or verbal exchange between himself and RWC. *Reynolds*, *supra*. Rather, RWC was minding his own business, unaware of Grauber's presence in the home, when Grauber set upon him with racial invective and a gun to his face. A few minutes later, Grauber's demeanor was calm when he introduced himself to RWC. Immediately thereafter, he uttered a verbal threat to RWC. See N.T. Trial, 11/21/17, at 20 ("Q: Okay. What about when he shook your hand and said my name is Bryant? What was his tone of voice like then? A: A calm voice."). Simply put, the evidence of record does not support a finding that Grauber's threatening actions and words were made in the context of a heated verbal exchange or confrontation. In addition, while Grauber defends his conduct as a "spur-of-the-moment reaction to an angering situation," Brief of Appellant, at 12, "[b]eing angry

---

[6] This Court has held that a conditional threat is sufficient to establish the crime of terroristic threats. *See In re J.H.*, 797 A.2d at 261 (terroristic threats established where juvenile told teacher if she spoke with his probation officer "it would be that last thing [she] ever did").

does not render a person incapable of forming the intent to terrorize." *In re J.H.*, 797 A.2d at 263.

Because Grauber's words and conduct were sufficient to establish, beyond a reasonable doubt, a threat to commit a crime of violence with the intent to terrorize RWC, we reject his challenge to the sufficiency of the evidence.

Grauber's last two claims involve allegations of trial court error in applying the deadly-weapon-used matrix under the Sentencing Guidelines to his sentences for simple assault and terroristic threats.[7] These claims implicate the discretionary aspects of Grauber's sentence. *See Commonwealth v. Kneller*, 999 A.2d 608, 613 (Pa. Super. 2010) (en banc) ("[A] challenge to the application of the deadly weapon enhancement implicates the discretionary aspects of sentencing."). A challenge to the discretionary aspects of a sentence is not appealable as of right. Rather, an

_____

[7] The Sentencing Guidelines provide, in relevant part, as follows:

> (1) When the court determines that the offender possessed a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Possessed Matrix (§ 303.17(a)). An offender has possessed a deadly weapon if any of the following were on the offender's person or within his immediate physical control:
>
>> (i) Any firearm, (as defined in 42 Pa.C.S. § 9712) whether loaded or unloaded[.]

204 Pa.Code § 303.10(a)(1)(i).

appellant must petition for allowance of appeal pursuant to 42 Pa.C.S.A. § 9781. **Commonwealth v. Colon**, 102 A.3d 1033, 1042 (Pa. Super. 2014).

> Before we reach the merits of this issue, we must engage in a four[-]part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. . . . [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

**Id.** at 1042-43, quoting **Commonwealth v. Austin**, 66 A.3d 798, 808 (Pa. Super. 2013).

Here, while Grauber filed a post-sentence motion to reconsider his sentence, the sole relief sought in that motion related to work release. Specifically, Grauber requested "that the Court [] reconsider its judgment of sentence in that participation in the work release program will frustrate Mr. Grauber's employment [and] will likely lead to his termination." Post-Sentence Motion, 3/23/18, at ¶ 6. Grauber did not raise in his post-sentence motion any claims related to the application of the deadly weapons matrix and, therefore, these claims are waived on appeal. **See** Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/18/19