J-S05015-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA : | IN THE SUPERIOR COURT OF |
| : | PENNSYLVANIA |
| : | |
| v. : | |
| : | |
| : | |
| : | |
| CLAYBORN CORNELL MORTON, JR. : | |
| : | |
| Appellant : | No. 648 MDA 2019 |

Appeal from the Judgment of Sentence Entered March 19, 2019
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0000013-2019

BEFORE:  SHOGAN, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                **FILED AUGUST 26, 2020**

Appellant, Clayborn Cornell Morton, Jr., appeals from the judgment of sentence imposed after a jury convicted him of terroristic threats, simple assault, recklessly endangering another person, and possessing instruments of crime ("PIC").[1]  We affirm.

The trial court summarized the facts of the case as follows:

> On December 13, 2018, Zabrina Marquez placed a call to 9-1-1 emergency services to report that she heard a male voice screaming for extended periods of time in the apartment below hers, where her daughter, Jazzalee Segura lived with her boyfriend, Appellant, Clayborn Morton.  (Notes of Testimony of March 18, 2019 Jury Trial "N.T." at 95).  She also reported hearing a female voice screaming . . . when she tried contacting her daughter via phone[.]
>
> Officer David Osario ("Officer Osario") responded to 246 South Tenth Street in Reading, Pennsylvania upon the 9-1-1 call.

---

[1]  18 Pa.C.S. §§ 2706(a)(1), 2701(a)(3), 2705, and 907(a), respectively.

(N.T. 89-90). When Officer Osario arrived, he knocked on the door of the first-floor apartment and Appellant answered the door shaking and sweating profusely. (N.T. 90). Appellant was speaking erratically and when asked whether anyone else was in the apartment, Appellant stated that his child and girlfriend were also there. *Id.*

As Officer Osario entered the apartment, he found Appellant's girlfriend, Jazzalee Segura ("the Victim"), in the bedroom, which is near the rear of the apartment. *Id.* Ms. Segura began to cry and told Officer Osario that Appellant had thrown a knife at her and had held the knife to her face. (N.T. 91). Officer Osario recovered a knife from an area between the radiator and tub in the bathroom of the apartment. (N.T. 91-92). The knife was described as light and pointed with a sharp-edge serrated at the bottom and a black handle. (N.T. 96). The Victim also informed Officer Osario that Appellant had used a second knife that was located in a knife block in the kitchen (N.T. 93-94).

Once Appellant was removed from the apartment and taken outside to be transported to central processing, Appellant began to scream and yell, drawing attention from bystanders along the street. (N.T. 94). Officer Osario advised Appellant to calm down and that there was no need for the outburst. *Id.*

In the days following Appellant's arrest, Appellant called the Victim three times while he was in prison. Portions of a recording of one of those phone calls [were] played at trial. (N.T. 88). During the portions of that phone call, the Victim tells Appellant that [he hurt her] and that she still had pain and bruising. (Ex. 5). The Victim also identifies that she told police that Appellant put a knife to her face and that police "took both knives." *Id.* Moreover, the Victim reminds Appellant that he told her that he would "put [her] in the hospital." *Id.* Finally, the Victim admits to Appellant that reassures Appellant that she would be uncooperative with the prosecution of the case. *Id.*

At the trial of this matter, the Victim testified that, on the day of the incident, she and Appellant were engaged in an intense argument regarding Appellant's lost payroll card. (N.T. 48-49). At some point during the argument, the Victim, in an attempt to separate and possibly diffuse the situation, moved in to the bathroom and began to take a shower. (NT. 49). As the Victim

was taking a shower, Appellant entered the bathroom through the open door and began to re-engage with the Victim. (N.T. 49-50). The Victim pulled the shower curtain back and yelled in response to Appellant, Appellant grabbed a knife that was kept in the bathroom. (N.T. 50-52). The Victim testified that she and Appellant kept the knife in the bathroom and used it to cut soap. (N.T. 50). The Victim further stated that Appellant continued to hold the knife up during the argument, though she denied telling law enforcement that Appellant held the knife to her face. (N.T. 53). The Victim also testified that during the argument and while she and Appellant were still in the bathroom, Appellant threw the knife in her direction. (N.T. 56-58). The Victim told police at the scene that she thought Appellant had another knife that he pulled from the kitchen, though she later stated that she was mistaken. (N.T. 59-60).

Trial Court Opinion, 10/21/19, at 1–2.[2]

On March 19, 2019, the trial court sentenced Appellant to an aggregate term of incarceration of thirty months to ten years in a state correctional institution. After denial of his post-sentence motion, Appellant filed a *pro se* notice of appeal. In light of Appellant's *pro se* filing, and the trial court docket indicating that trial counsel was permitted to withdraw, this Court, on July 24, 2019, ordered the trial court to determine whether Appellant was entitled to court-appointed counsel or if Appellant's waiver of counsel was knowing, intelligent, and voluntary, pursuant to ***Commonwealth v. Grazier***, 713 A.2d

_____

[2] Ms. Segura was a reluctant trial witness and initially invoked her Fifth Amendment privilege against self–incrimination. When the Commonwealth offered Ms. Segura immunity, the trial court ordered her to testify. N.T., 3/18/19, at 27. Ms. Segura's trial testimony changed substantially from the version of events she described to the officer responding to the 911 call, as she generally downplayed the level of intensity of the altercation with Appellant. Appellant does not dispute the trial court's finding that Ms. Segura later assured Appellant that she would not cooperate in the prosecution of the case against Appellant. ***See*** Trial Court Opinion, 10/21/19, at 2; ***see also*** n.3, *infra.*

81 (Pa. 1988). Order, 7/24/19, at unnumbered 1. On August 14, 2019, the trial court held the *Grazier* hearing, and present counsel was appointed to represent Appellant. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

1. Whether there was sufficient evidence to support the jury's verdict as to terroristic threats as the Commonwealth failed to prove that the Appellant's actions and/or words established that the Appellant communicated to the victim either directly or indirectly a threat to commit any crime of violence?

2. Whether there was sufficient evidence to support the jury's verdict as to simple assault as the Commonwealth failed to prove that Appellant's actions and/or words established that Appellant attempted by physical menace to put the victim in fear of imminent serious bodily injury?

3. Whether there was sufficient evidence to support the jury's verdict as to possessing an instrument of crime as the Commonwealth failed to prove that the Appellant possessed a knife with intent to employ it criminally?

4. Whether there was sufficient evidence to support the jury's verdict as to recklessly endangering another person as the Commonwealth failed to prove that Appellant's actions with a knife placed or may have placed the victim in danger of death or serious bodily injury as the knife was never close enough to cause injury?

Appellant's Brief at 5.

Appellant challenges the sufficiency of the evidence underlying each of his convictions. The standard we apply in reviewing the sufficiency of the evidence is whether:

viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond

a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Adams*, 39 A.3d 310, 323 (Pa. Super. 2012) (quoting

*Commonwealth v. Brown*, 23 A.3d 544, 559–560 (Pa. Super. 2011) (*en banc*)).

Appellant was convicted of terroristic threats under 18 Pa.C.S. § 2706 (a)(1), which provides that: "[a] person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to . . . commit any crime of violence with intent to terrorize another." To sustain a conviction for this offense "'the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror.'" *Commonwealth v. Beasley*, 138 A.3d 39, 46 (Pa. Super. 2016) (quoting *Commonwealth v. Reynolds,* 835 A.2d 720, 730 (Pa. Super. 2003) (internal quotations omitted)). Additionally, "[n]either the ability to carry out the threat, nor a belief by the person

threatened that the threat will be carried out, is an element of the offense." **Beasley**, 138 A.3d at 46 (quotation omitted). "Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." **Id**. (internal citation and quotation omitted).

The trial court determined that the following evidence was sufficient to support Appellant's conviction of terroristic threats:

> During the phone call between Appellant and the Victim that was played at trial, the Victim reiterates to Appellant that he told her that he would "put [her] in the hospital." Appellant does not refute the charge and admits that he was upset at the time. Clearly, the statement, conveyed in the circumstances of the incident, would communicate a threat to commit an act of violence.

Trial Court Opinion, 10/21/19, at 6.

Appellant maintains that the evidence does not support the terroristic threats conviction because "his 'arguing' with Ms. Segura without any specific words that he uttered is woefully insufficient in establishing a crime inside a residence." Appellant's Brief at 11. Appellant also claims the Commonwealth did not show he demonstrated the necessary *mens rea* required for this offense. **Id.** at 15.

We first observe that Appellant's assessment of the evidence is incomplete. While it appears that the threat to put Ms. Segura in the hospital occurred at some point during their argument on December 13, 2018, there is no direct trial evidence pinpointing when and where Appellant uttered the

threat.[3]  Additionally, Appellant's position that there was no proof of "specific words" is belied by the record.  Although Ms. Segura initially denied that Appellant made the statement either during their argument or sometime thereafter, **see** N.T., 3/18/19, at 60, 65, she conceded that if the taped telephone call revealed that she reminded Appellant about the threat to put her in the hospital, she would agree that she made the comment to Appellant. **Id.** at 66.

Appellant further contends that there was "no evidence that can be inferred from the testimony that demonstrates an intent to terrorize another." Appellant's Brief at 15.  Regarding this second element of a terroristic threat offense, the intent to terrorize, the comment to the pertinent statute instructs that "[t]he purpose of [section 2706] is to impose criminal liability on persons

_____

[3] The recorded telephone calls were contained on a disc, played for the jury, and introduced into evidence as Commonwealth's Exhibit 5.  N.T., 3/18/19, at 82, 88–89.  The exhibit, however, was not included in the record certified to us on appeal.  "[I]t is an appellant's duty to ensure that the certified record is complete for purposes of review.  In addition, our Court has stated a '[f]ailure to ensure that the record provides sufficient information to conduct a meaningful review constitutes waiver of the issue sought to be reviewed.'" **Commonwealth v. Lopez**, 57 A.3d 74, 82 (Pa. Super. 2012) (internal citation omitted).  If the appellant has failed in that duty, and we are unable as a result to decide a particular issue on appeal, the appellant has waived the issue.  **Commonwealth v. O'Black**, 897 A.2d 1234, 1238 (Pa. Super. 2006).

We will not find waiver herein because Appellant does not contradict the trial court's representation of the content of the conversation.  Although our analysis is somewhat hampered by the absence of the disc, we can resolve Appellant's issue without review of the missing exhibit.

who make threats which seriously impair personal security or public convenience. It is not intended by this section to penalize mere spur-of-the-moment threats which result from anger." 18 Pa.C.S. § 2706 cmt. However, although spur-of-the-moment threats produced in anger do not satisfy the intent element, "[b]eing angry does not render a person incapable of forming the intent to terrorize." *Commonwealth v. Fenton*, 750 A.2d 863, 865 (Pa. Super. 2000). This Court has stated, "the real issue [i]s whether the Commonwealth presented sufficient evidence to establish the required *mens rea,* not whether [an appellant] made the statements in the context of a heated discussion." *Commonwealth v. Walls*, 144 A.3d 926, 936 (Pa. Super. 2016). We must consider the totality of circumstances to determine if a defendant had the necessary *mens rea*. *Id.* at 936.

In *Walls*, an assistant district attorney (the "ADA") was shopping in a mall when she heard the appellant yell "Hey, ADA" from the store's entrance. The appellant then identified himself by name, and shouted that the ADA prosecuted him for a crime he did not commit. The appellant entered the store and continued to yell that his incarceration caused his grandmother's death. As the appellant got closer to the ADA his voice took on a more serious tone and store employees and customers then intervened. When the appellant was escorted from the store, he shouted at the ADA that she caused his grandmother's death and that she should be next. During the encounter, the appellant never made physical contact with the ADA and she sustained no

injuries resulting from her interaction with the appellant. **Walls**, 144 A.3d at 930.

In reversing the appellant's terroristic threats conviction, we determined that there was insufficient evidence that he intended to terrorize the ADA as the evidence only supported a conclusion that the appellant "made a spur-of-the-moment threat as the result of anger during a random confrontation at a local shopping mall." **Walls**, 144 A.3d at 938. We additionally noted that the appellant "did not specifically threaten harm to [the ADA] presently or in the future." Instead, the appellant "made the threat at the conclusion of the confrontation while being led away from the [ADA]." **Id.** We thereby concluded that these circumstances, indicating that the appellant made a spontaneous threat that did not evince a settled intent to terrorize, could not sustain a finding of guilt for terroristic threats. **Id.**

**Walls** is distinguishable from the present matter. First, Appellant's threat did not occur during a random confrontation. Second, Appellant specifically threatened Ms. Segura when he told her that he would put her in the hospital. Finally, Appellant possessed a knife and threw it at Ms. Segura during the couple's argument. Thus, the victim in this case was subjected to the type of impairment of personal security that the statute seeks to prevent. **See Commonwealth v. Hudgens**, 582 A.2d 1352 (Pa. Super. 1990) (evidence sufficient to support terroristic threats conviction where the defendant held a sword inches from victim and said that he was going to get

him; "victim in this case was subjected to the precise type of psychological harm and impairment of personal security which the statute seeks to prevent."). *Id.* at 1359. In view of the totality of these circumstances, the Commonwealth presented sufficient evidence that Appellant was guilty of terroristic threats.

Appellant also levels an insufficient evidence challenge to his conviction for simple assault. A person is guilty of simple assault if he "attempts by physical menace to put another in fear of imminent serious bodily injury." 18 Pa.C.S. § 2701(a)(3). To sustain a conviction of simple assault by physical menace, "[t]he elements which must be proven are intentionally placing another in fear of imminent serious bodily injury through the use of menacing or frightening activity." *Reynolds*, 835 A.2d at 726 (citations omitted). Appellant urges this Court to find that the Commonwealth failed to prove that he intended to "place another in fear of imminent serious bodily injury." Appellant's Brief at 15.

"Intent can be proven by circumstantial evidence and may be inferred from the defendant's conduct under the attendant circumstances." *Reynolds*, 835 A.2d at 726 (quoting *Commonwealth v. Repko*, 817 A.2d 549, 554 (Pa. Super. 2003) (internal citation omitted)). For example, "[t]he act of pointing a gun at another person [can] constitute simple assault as an attempt by physical menace to put another in fear of imminent serious bodily injury."

*Reynolds,* 835 A.2d. at 726 (quoting *Commonwealth v. Maloney*, 636 A.2d 671, 674 (Pa. Super. 1994)).

We conclude that the evidence presented in the current action was sufficient to allow the jury to find that Appellant intended to place Ms. Segura in fear of serious bodily injury. Grabbing a knife and throwing it towards Ms. Segura is analogous to pointing a firearm at another person. Such behavior, occurring in the throes of a heated argument, constitutes simple assault as it represents an attempt by physical menace to put another in fear of imminent serious bodily injury. Consequently, the evidence admitted at trial and all reasonable inferences drawn therefrom supported Appellant's conviction for simple assault by physical menace beyond a reasonable doubt.

Appellant presents the same lack-of-intent claim concerning his PIC conviction. Pursuant to Section 907 of the Crimes Code, an individual is guilty of PIC if "he possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S. § 907(a). Section 907(d) defines an instrument of crime as "(1) [a]nything specially made or specially adapted for criminal use[, or] (2) [a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.S. § 907(d). The defendant's criminal purpose provides the basis for his liability; we can infer purpose from the circumstances surrounding the possession of the instrument of crime. *Commonwealth v. Andrews*, 768 A.2d 309, 318 (Pa. 2001).

As previously explained, "[i]ntent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances." *Commonwealth v. Miller*, 172 A.3d 632, 641 (Pa. Super. 2017) (citation omitted). Although a factfinder may infer criminal intent beyond a reasonable doubt based on circumstantial evidence, intent may not be inferred based on mere possession. *See In re A.V.*, 48 A.3d 1251, 1254 (Pa. Super. 2012) (citation omitted).

Here, the evidence demonstrated Appellant picked up a knife kept in the bathroom for cutting soap and threw it at Ms. Segura while she was in a confined space. Clearly, this employment of the knife was not in a manner consistent with a lawful use. Consequently, the evidence, which also supports Appellant's conviction for simple assault, is sufficient to demonstrate that he intended to use the knife for a criminal purpose.

Appellant's final argument concerns his conviction of recklessly endangering another person. "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. Appellant contends that his conviction of this offense must be reversed because the Commonwealth's evidence of risk of death or serious bodily injury was "certainly remote at best." Appellant's Brief at 16. He described that evidence as demonstrating only that he "was in possession of

a knife inside a bathroom while Ms. Segura was in the shower, and then [he] 'tossed' the knife in the bathroom before leaving." ***Id***.

Even Appellant's overly sanitized characterization of the events transpiring in the bathroom is adequate to show risk of serious bodily harm. Propelling a knife with a serrated blade towards or near another person, who is likely unclothed, in a small space certainly poses a risk of serious bodily harm to the confined person. Any argument that the risk of injury was remote is illogical.

Based upon our review of the record and the briefs of the parties, viewing the evidence in a light favorable to the Commonwealth, we conclude that the evidence was sufficient to support Appellant's convictions. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Musmanno joins the Memorandum.

Judge Kunselman files a Concurring & Dissenting Memorandum.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 08/26/2020

- 13 -