J-A28038-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARC E. ROTHSTEIN | |
| Appellant | No. 330 EDA 2014 |

Appeal from the Judgment of Sentence December 6, 2013
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0008517-2012

BEFORE:  GANTMAN, P.J., WECHT, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED NOVEMBER 25, 2014**

Appellant Marc Rothstein ("Appellant") appeals the judgment of sentence entered on December 6, 2013, by the Montgomery County Court of Common Pleas.  After careful consideration, we affirm.

The trial court summarized the facts and procedural history of this matter as follows:

> On May 22, 2012, at approximately 6:30 p.m., Eileen Potts arrived at her home located in a townhouse development at 103 Stratford Court, Lansdale, Montgomery County, PA, after having had dinner with her sister, Sharon Glick.  Appellant was and remains a neighbor of both Ms. Potts and Ms. Glick, who live together with Ms. Potts' husband.  Appellant lives two doors down from the Potts-Glick home.

> On that evening, Ms. Potts drove up to her home and she saw Appellant talking with her sister in a neighbor's yard.  As Ms. Potts pulled into her driveway she had an unobstructed view of Appellant.  Her vehicle was facing right towards him.  She observed Appellant had a very big hole in the front of his khaki pants.  A rip, a very clean cut that looked like it was done with

scissors. Appellant had no underwear on. Ms. Potts was very horrified, scared and really freaked out when she observed Appellant's erect penis and scrotum exposed by the gaping hole in his khaki pants. At that point, Ms. Potts wanted to get her sister out of the situation. She got out of her car, and as she held up her cell phone, she told her sister that someone was on the phone and wanted to talk to her. They went quickly into their home.

At trial, Ms. Glick, who arrived home a few minutes before her sister, testified that she parked her car in the same parking spot as usual. As she got out of her car, Appellant was coming out of his home and engaged her in small talk. At that point, Appellant was approximately 12 feet away from Ms. Glick. Ms. Glick noticed that Appellant was wearing khaki pants that had a huge gaping cut in them. A cut from about the middle of the crotch down to about the knee. She noticed the cut right away. Ms. Glick thought she had better get into her home as fast as she can. She moved quickly towards her house and tried to position herself behind a neighbor's for sale sign to act as a barrier to her view of Appellant's pants. At that point, Ms. Glick's sister arrived home and was able to extricate her from the situation.

The sisters were very shocked, and they went immediately to the police station to report the incident as it seemed like an escalation from other previous and similar incidents that occurred throughout the previous year.

Appellant was charged two days after the May 22, 2012 incident, and he proceeded to a two-day trial that commenced on September 30, 2013. At trial both Ms. Glick and Ms. Potts testified. On behalf of Appellant, defense counsel called numerous character witnesses to testify. In addition, Appellant testified in his own defense testifying that he had not known all day there was a rip in his pants and he threw them out as soon as he realized it that night. It was also part of the defense theory that the victims were not Appellant's type of women that he is attracted to. Appellant admitted that he knew of no reason that both victims would make up these allegations.

At the conclusion of the trial, a jury found Appellant guilty of [one count of] indecent exposure. This [c]ourt found Appellant guilty of two counts of harassment. Appellant was sentenced on December 6, 2013. A post-sentence motion was

- 2 -

filed on December 16, 2013, which was subsequently denied on January 3, 2014. This timely appeal followed.

1925(a) Opinion, pp. 1-3 (record citations and quotations omitted).

Appellant raises the following claims for review:

1. Was the evidence insufficient as a matter of law to sustain [Appellant's] conviction for indecent exposure?

2. Was the evidence insufficient as a matter of law to sustain [Appellant's] convictions for harassment?

3. Even if the evidence was sufficient to sustain [Appellant's] convictions, were the verdicts nevertheless against the weight of the evidence?

Appellant's Brief, p. 4.

## 1. Sufficiency of the Evidence – Indecent Exposure

Appellant first claims the Commonwealth adduced insufficient evidence to convict him of indecent exposure. He is incorrect.

When examining a challenge to the sufficiency of evidence, this Court's standard of review is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in

applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super.2011), *appeal denied*, 32 A.3d 1275 (Pa.2011).

The Crimes Code defines indecent exposure as:

**(a)  Offense defined.–**A person commits indecent exposure if that person exposes his or her genitals in any public place or in any place where there are present other persons under circumstances in which he or she knows or should know that this conduct is likely to offend, affront or alarm.

18 Pa.C.S. § 3127.  "[I]t is well-established that the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses."  *Commonwealth v. Castelhun*, 889 A.2d 1228, 1233 (Pa.Super.2005) (citations omitted); *Commonwealth v. Trimble*, 615 A.2d 48, 50 (Pa.Super.1992).

Here, the trial court explained the indecent exposure testimony/evidence as follows:

In this case, the decisive and unwavering testimony of Ms. Potts and Ms. Glick established that Appellant had a large gaping rip in his khaki pants.  The rip looked intentionally made with a scissors.  It was from [the] middle of the crotch area down to about the knee area.  A cut which would be hard not to notice, contra to Appellant's testimony that he was unaware there was a rip in his pants.  Additionally, Ms. Potts testified that the unobstructed view of Appellant and the rip in his pants exposed his erect penis and scrotum.  This left Ms. Potts feeling horrified, scared and really freaked out.  This evidence showed that Appellant exposed his erect penis and scrotum, seen by Ms. Potts, under the guise of making small talk with Ms. Glick, who

purposely obstructed her own view. It is reasonable to assume that exposing his genitals under these circumstances to Ms. Potts would offend, affront or alarm.

1925(a) Opinion, p. 12 (quotations omitted). Further, the trial court found the Commonwealth victims' testimony fully credible:

Ms. Potts' and Ms. Glick's testimony was decisive and never waivered. Although each sister had a different vantage point of the incident and their respective testimony reflected this difference, their testimony was consistent with each other's in all other aspects. It is important to note that the incident occurred at about 6:30 p.m. on May 22, 2012, when it was still light outside. There was nothing even remotely unreliable about the testimony of either victim.

*Id.* This Court is bound by the trial court's credibility determinations. *See Commonwealth v. Gibson*, 720 A.2d 473, 481 (Pa.1998) ("Credibility determinations are strictly within the province of the finder of fact; therefore, an appellate court may not reweigh the evidence and substitute its judgment for that of the finder of fact.").

Viewed in the light most favorable to the Commonwealth as verdict winner, this evidence was sufficient to convict Appellant of indecent exposure.

### 2. Sufficiency of the Evidence – Harassment

Appellant next claims the Commonwealth's evidence was insufficient to support his conviction for harassment because the Commonwealth did not prove a course of conduct. Again, he is incorrect.

The Crimes Code defines Harassment, in pertinent part, as follows:

**(a)    Offense defined.–**A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:

*****

(3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose[.]

18 Pa.C.S. § 2709.  "An intent to harass may be inferred from the totality of the circumstances."    *Commonwealth v. Cox*, 72 A.3d 719, 721 (Pa.Super.2013); *see also Commonwealth v. Reynolds*, 835 A.2d 720, 726 (Pa.Super.2003) ("Intent can be proven by circumstantial evidence and may be inferred from the defendant's conduct under the attendant circumstances.").  Further, the statute defines "course of conduct" as:

A pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct.  Acts indicating a course of conduct which occur in more than one jurisdiction may be used by any other jurisdiction in which an act occurred as evidence of a continuing pattern of conduct or a course of conduct.

18 Pa.C.S. § 2709(h).

Here, the trial court summarized the harassment-specific trial testimony as follows:

. . . Ms. Potts testified that the May 22, 2012, incident was similar in nature to about 3 or 4 previous incidents that occurred throughout the previous year.  She described one in particular in which Appellant was wearing pajama type bottoms, which she described as Eagles pants, without a zipper.  It was open where the zipper would be.  On that occasion, Ms. Potts and Ms. Glick were getting ready to go to the movies on a Saturday.  As Ms. Potts started driving forward after backing out of her driveway,

she saw Appellant on his front porch with his penis sticking out of his pants as he waived [sic] to the sisters. In about 3 other incidents, Ms. Potts described how Appellant would go out to his car as if he was doing something, and when he'd turn around Ms. Potts observed that he had an erection. These incidents made Ms. Potts feel very scared.

Ms. Glick described prior incidents as well. She testified that in these other incidents, Appellant would be wearing flannel Eagles bottoms with a flap in the front where the zipper would be on regular pants. Appellant would come out of his home and engage in small talk and all of a sudden Appellant would position himself in such a manner that she could see he had an erection. In particular, Ms. Glick recalled a time in which Appellant was just standing there and his penis came out of his pants, and he swiped over his penis to put it back in his pants. Ms. Glick approximated that these incidents occurred about 15 times. These incidents made Ms. Glick feel frightened.

1925(a) Opinion, pp. 13-14 (record citations and footnote omitted).

Viewed in the light most favorable to the Commonwealth as verdict winner, this evidence illustrated Appellant engaged in repeated behavior intended to harass, annoy, or alarm. Accordingly, the Commonwealth adduced sufficient evidence to convict Appellant of harassment.

### 3. *Weight of the Evidence*

Finally, Appellant makes a weight of the evidence claim[1] as to his convictions based on alleged deficiencies in the victim-witnesses' perception. The claim lacks merit.

_____

[1] Appellant properly preserved this claim by filing a post-sentence motion that requested a new trial based on weight of the evidence. **See** Pa.R.Crim.P. 607.

This Court's review of weight of the evidence claims is governed by the following standard:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

**Commonwealth v. Widmer**, 744 A.2d 745, 751-52 (Pa.2000) (internal citations, quotations, and footnote omitted).

Stated differently, a court may award a new trial because the verdict is against the weight of the evidence only when the verdict is so contrary to the evidence as to shock one's sense of justice,[2] "such that right must be

---

[2] This Court has explained the notion of "shocking to one's sense of justice" as follows:

> When the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.

*(Footnote Continued Next Page)*

given another opportunity to prevail." ***Commonwealth v. Goodwine***, 692 A.2d 233, 236 (Pa.Super.1997). Moreover, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. ***Widmer***, 744 A.2d at 753. When reviewing the trial court's determination, this Court gives the gravest deference to the findings of the court below. We review the court's actions for an abuse of discretion. ***Id.***

The trial court's 1925(a) opinion extensively and repeatedly discussed the details of the victim-witnesses' testimony and found both Ms. Potts and Ms. Glick completely reliable. ***See*** 1925(a) Opinion, pp. 12, 15-16; ***see Gibson***, ***supra***. Nothing about the verdict or the reasoning contained in the trial court's 1925(a) opinion shocks the conscience. The trial court did not abuse its discretion in denying Appellant's post-sentence motion for a new trial based on the weight of the evidence.

Judgment of sentence affirmed.

*(Footnote Continued)* ——————————

***Commonwealth v. Davidson***, 860 A.2d 575, 581 (Pa.Super.2004) (internal citations and quotations omitted).

Judgment Entered.

Joseph D. Seletyn, Esc.
Prothonotary


Date: 11/25/2014