J-S11011-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| K.B.M. | : | |
| | : | |
| Appellant | : | No. 1325 EDA 2023 |

Appeal from the Judgment of Sentence Entered April 17, 2023
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-SA-0000023-2023

BEFORE:   BOWES, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                              **FILED JULY 15, 2024**

K.B.M. appeals from the fine of five dollars imposed following her conviction for one count of summary disorderly conduct.  We vacate and remand for a new trial.

The facts underlying Appellant's conviction are straightforward.  Officer LaTonya Ransom, employed by the Easton Area School District Police Department, was working security at a school football game.  She saw Appellant, who was then twelve years old, fighting another juvenile, identified as A.B.  She separated the girls, grabbing Appellant in the process.  Appellant and several nearby students stated that Appellant had been attacked by the other girl.  Officer Ransom instructed Appellant to leave the area, but she refused and "was trying to push through" Officer Ransom, which the officer

_____

[*] Retired Senior Judge assigned to the Superior Court.

presumed was for the purpose of continuing to fight A.B. ***See*** N.T., 4/17/23, at 13. Officer James Fritts, employed by the same department, responded to Officer Ransom's request for assistance and ordered everyone to disperse. Appellant then told the officers that the fight had been mutual and "to leave her the fuck alone." ***Id***. at 8. At that point, Officer Fritts physically escorted Appellant from the premises.

Officer Fritts thereafter issued Appellant two citations. One was for disorderly conduct. That citation stated: "[Appellant] was involved in a mutual fight with a juvenile . . . and physical contact was made between the two." Citation for Disorderly Conduct, 11/11/22. A separate citation for harassment stated that Appellant, "after being involved in a fight was approached by . . . LaTonya Ransom. It was at that time [Appellant] pushed/shoved LaTonya." Citation for Harassment, 11/11/22. Officer Fritts withdrew the harassment charge in exchange for Appellant's plea before a magisterial district judge to disorderly conduct. Nonetheless, after she pled guilty, Appellant appealed to the court of common pleas for a *de novo* bench trial pursuant to Rule of Criminal Procedure 462.[1]

---

[1] The Commonwealth was not precluded from seeking reinstatement of the withdrawn harassment charge related to Appellant's interactions with Officer Ransom. ***See Commonwealth. v. Lennon***, 64 A.3d 1092 (Pa.Super. 2013) (holding that a defendant, by appealing a summary guilty plea for a *de novo* trial under Rule 462, waives any double jeopardy defenses concerning reinstatement of withdrawn charges). However, the Commonwealth did not seek to do so in this case. Accordingly, the harassment citation was not before the court at the *de novo* trial.

At the close of testimony, Appellant argued that the Commonwealth failed to meet its burden as to disorderly conduct because there was no evidence regarding how the fight started, and that she may have acted in self-defense. The trial court stated the following in finding Appellant guilty:

> So she's charged with disorderly conduct, and I understand the argument that she was defending herself from another juvenile, and she may have been okay up until the point where she started pushing back with Officer Ransom and with Officer Fritts and swearing and yelling at them and pushing them back. I think that's where the violation is.

*Id*. The court then issued a fine as indicated hereinabove.

Appellant filed a timely notice of appeal, complied with the court's order to file a concise statement under Pa.R.A.P. 1925(b), and raises three arguments for our consideration:

> 1. Did the trial court err in finding Appellant guilty of [d]isorderly [c]onduct, since the evidence presented at the summary trial did not establish that Appellant intentionally or recklessly engaged in fighting, or violent or tumultuous behavior, with respect to the encounter with the alleged victim identified by name in the charging document?
>
> 2. Where the charging document specifically identified the alleged victim by name, and specifically described the conduct on which the charge was based, did the trial court err in finding Appellant guilty of conduct in an encounter, and with an alleged victim, different than that set forth in the charging document?
>
> 3. Did the trial court's finding of guilt in this case, based upon conduct at a different location and time, and with a different person than what was charged in the charging document, constitute a violation of Appellant's due process [rights], and the conviction should be vacated, and the action dismissed with prejudice?

Appellant's brief at 4.

Appellant's core contention is that the trial court was required to return a conviction for disorderly conduct only if the Commonwealth established beyond a reasonable doubt that she engaged in disorderly conduct relative to her fighting A.B. Appellant's theory sounds in due process, beginning with the rule-based requirement that "[e]very citation shall contain . . . the specific section and subsection of the statute or ordinance allegedly violated, together with a summary of the facts sufficient to advise the defendant of the nature of the offense charged[.]" Pa.R.Crim.P. 403(A)(6). Here, the citation for disorderly conduct "specifically charge[d] involvement in a mutual fight with a juvenile named [A.B.], involving physical contact between the two of them." Appellant's brief at 12-13.

Appellant additionally asserts a lack of notice, which caused unfair surprise at trial in violation of procedural due process protections. She emphasizes that the harassment charge, which specifically listed her shoving Officer Ransom, had been withdrawn and Appellant "understood that, at the trial in this matter, she was being charged with activity relating to the encounter with [A.B.]." Appellant's brief at 13. Appellant maintains that the Commonwealth failed to establish any crime regarding her fight with A.B., as "neither of the testifying officers saw how the fight began, and [Officer] Ransom testified that not only [Appellant], but a number of other people who were present, stated that Appellant was assaulted by [A.B.], and was fighting to defend herself." *Id*. Appellant views the trial judge as finding her guilty of a crime that the Commonwealth did not charge. For this reason, Appellant

- 4 -

does not address whether the evidence was sufficient to convict Appellant of disorderly conduct based on her interactions with Officer Ransom.

The Commonwealth counters that "the record and [trial judge]'s description of his rationale for his guilty verdict established that [Appellant]'s disorderly conduct consisted of pushing Officer Ransom as [the officer] was attempting to separate [Appellant] from the other student while they were engaged in a fight." Commonwealth's brief at 7. According to the Commonwealth, the fight between Appellant and A.B. and "the pushing of [Officer Ransom] during the breakup of the fight" constituted one overarching instance of disorderly conduct for which Appellant received adequate notice. *Id*. Addressing Appellant's claim that the citation did not reference Appellant's behavior towards Officer Ransom as a basis for conviction, the Commonwealth responds that this "is absurd" as the disorderly conduct citation "listed LaTonya Ransom as a witness . . . . In addition, the withdrawn [h]arassment [c]itation introduced into the record . . . explicitly described the pushing of Officer Ransom as part of [Appellant]'s criminal conduct." *Id*. at 8.

The Commonwealth's argument invokes the familiar principle that "[a] variance between the citation or indictment and the proof at trial is not fatal if it still gives the defendant sufficient notice and does not cause surprise which is prejudicial to the defense." *Commonwealth v. Mutzabaugh*, 699 A.2d 1289, 1291 (Pa.Super. 1997). However, that principle does not apply here. The "sufficient notice" is not simply notice of the basic facts and context surrounding the incident, but rather notice of what crime the Commonwealth

intends to prove. *See Commonwealth v. King*, 234 A.3d 549, 560 (Pa. 2020) (observing that the "notice component sets the stage for what the government intends to prove to the jury").

Accordingly, the Commonwealth's decision to cite Appellant for disorderly conduct specifically for engaging in a mutual fight with A.B. limited the available legal theory of criminal liability to those acts. "Appellate courts are not permitted to affirm convictions on any theory they please simply because the facts necessary to support the theory were presented to the jury." *McCormick v. United States*, 500 U.S. 257, 270 (1991). Appellant was not tried by a jury, but the point remains that a criminal defendant is entitled to have the fact-finder decide guilt based on the theories specifically pursued by the Commonwealth. Neither the court as the trier of fact, nor this Court on review, can unilaterally decide that an alternative theory suffices to establish guilt, even if those facts would have been sufficient to establish the elements of the crime.

Our decision *Commonwealth v. Taylor*, 471 A.2d 1228 (Pa.Super. 1984), illustrates this point. In that case, Taylor drove his thirteen-year-old daughter and her twelve-year-old friend to Ocean City, New Jersey. On the drive home, Taylor drank several beers in the car and was almost involved in a collision. He decided to rent a motel room, where he allegedly made sexual advances on both girls. The Commonwealth filed a criminal information charging Taylor with, *inter alia*, endangering the welfare of the children. The

charging document "alleged no facts," and simply indicated that Taylor "had endangered the welfare of children." *Id*. at 1232.

At trial, the Commonwealth elicited testimony concerning "events which had allegedly occurred in Room 136 of the Penn Motel. The Commonwealth did not attempt to prove that [Taylor] had been intoxicated while driving his motor vehicle or that he had operated his vehicle in a way that was reckless or even negligent." *Id*. The jury asked the trial court if it could consider other conduct as endangering welfare, citing the allegations of drinking and driving. The trial court, over Taylor's objections, told the jury it could consider all the evidence, and it ultimately found Taylor guilty. We concluded that he was entitled to a new trial for these reasons:

> This instruction was erroneous. It permitted the jury to convict [Taylor] on the basis of conduct which had not previously been included in the accusation against him. The information, to be sure, had charged [Taylor] generally with endangering the welfare of children. The [criminal] complaint, however, had been specific. The conduct complained of had occurred in the motel room, and that is what the Commonwealth attempted to prove [at trial]. To permit the jury during its deliberations to change its focus and base a possible conviction on the manner in which [Taylor] had driven his car before arriving at the motel was erroneous and unfair. The change in focus came as a complete surprise to [Taylor]. It came after the presentation of evidence had been completed and, therefore, at a time when neither [Taylor] nor the Commonwealth could present evidence or argue facts to assist the jury in determining whether a crime had been committed before [Taylor] arrived at the motel. The jury was also permitted to speculate about such an offense without any guidance by the court. . . . . The prosecution did not contend and the evidence did not prove that [Taylor]'s conduct while driving the car to the motel had constituted a knowing endangerment of the children's

- 7 -

> welfare by failing to provide for their care, protection or support while they were passengers in his car. To allow the jury to so find was error. A new trial, therefore, is necessary.

*Id*. at 1233.

To reiterate, the Commonwealth's citation in the instant case specifically referenced only the fight between Appellant and A.B., and the trial testimony and legal arguments by the parties focused on those acts. As in *Taylor*, the Commonwealth's theory listed in the complaint, *i.e.* the written citation, was limited to specific behavior. Moreover, the *Taylor* Court highlighted that allowing the fact-finder to come up with its own theory of liability deprived the litigants of the ability to offer argument and evidence tailored to those points. The trial court's decision to rest its judgment on what it believed to constitute disorderly conduct, without the Commonwealth presenting a case to support that theory, deprived Appellant of her ability to offer argument on that issue.[2] We therefore conclude that Appellant was prejudiced, and a new trial is warranted.

---

[2] It appears that the trial court's departure from the Commonwealth's cited theory stemmed, in part, from Appellant's ambiguous invocation of self-defense. *See* N.T., 4/17/23, at 22 (arguing that her act of "defending herself" was relevant to her intent rather than as justification for the use of force that the Commonwealth had the burden to disprove). Meanwhile, the Commonwealth erroneously suggested that self-defense was not available. *Compare* N.T., 4/17/23, at 23 ("Nowhere does the statute require that [K.B.M.] needed to ha[ve] initiated the fight."); *with Commonwealth v. Reynolds*, 835 A.2d 720, 731 (Pa.Super. 2003) (examining claim of self-defense to charge of disorderly conduct). This issue, if raised again, can be squarely decided in the new trial.

Judgment of sentence vacated. Conviction vacated. Remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/15/2024