J-S52016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MIA GROOMS | |
| Appellant | No. 2305 EDA 2015 |

Appeal from the Judgment of Sentence Entered July 9, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0007923-2014

BEFORE:  FORD ELLIOTT, P.J.E., STABILE, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED SEPTEMBER 19, 2016**

Appellant Mia Grooms appeals from the July 9, 2015 judgment of sentence entered in the Court of Common Pleas of Philadelphia County ("trial court"), following her bench conviction for driving under the influence ("DUI") in violation of 75 Pa.C.S.A. § 3802(d)(1)(iii) and (2).  Upon review, we affirm.

The facts and procedural history underlying this case are undisputed.[1] On October 16, 2011, at approximately 1:45 a.m., Inspector David Bellamy of the Philadelphia Police Department observed a traffic jam in the area of

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Unless otherwise specified, these facts come from the trial court's December 21, 2015 opinion.

2200 West Ontario Street in Philadelphia. At that time, he observed a white Mitsubishi Galant parked against the flow of one-way traffic. Several vehicles were honking as they attempted to get past the parked Mitsubishi on the narrow one-way street. Inspector Bellamy observed Appellant near the driver's area of the Mitsubishi. Appellant was stumbling. When Inspector Bellamy approached Appellant, she appeared hazy and her eyes glassy. The keys were in the ignition and the Mitsubishi was running. Appellant failed to fully cooperate with Inspector Bellamy. Appellant then reached inside the Mitsubishi through the open driver's side door, took a cup from the center console, and poured out its contents on the road. Inspector Bellamy called for backup. Officer Michael McCormick responded.

Officer McCormick approached Appellant as she was sitting in the driver's seat of the Mitsubishi and asked her to step outside. Officer McCormick testified "I asked her to step out. She was basically nonverbal, could barely stand, had trouble—swaying or sagging, however you want to call it, and she was—we had to direct her to lean up against another vehicle to keep her from falling on the ground." Trial Court Opinion, 12/21/15 at 5 (record citations omitted).

Appellant eventually was charged with and convicted of the above-mentioned DUI offenses and sentenced to 12 to 24 months' imprisonment

under Subsection 3802(d)(1)(iii) and 24 months' probation for Subsection 3802(d)(2).[2]

On appeal, Appellant raises two issues for our review. First, Appellant argues that the evidence was insufficient to sustain her conviction under Subsection 3802(d)(1)(iii) (controlled substance) because the Commonwealth failed to establish that she operated or was in physical control of the movement of the Mitsubishi.[3] Second, Appellant argues that

---

[2] We observe that Appellant had multiple prior DUIs. **See** N.T. Sentencing, 5/19/15 at 7.

[3] "A claim challenging the sufficiency of the evidence is a question of law." **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000).

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Antidormi**, 84 A.3d 736, 756 (Pa. Super. 2014), **appeal denied**, 95 A.3d 275 (Pa. 2014).

her sentences under Subsections 3802(d)(1)(iii) and 3802(d)(2) should merge for sentencing purposes.

With respect to Appellant's sufficiency of the evidence claim, after careful review of the record, and the relevant case law, we conclude that the trial court accurately and thoroughly addressed the issue on appeal. *See* Trial Court Opinion, 12/21/15, at 8-12. Accordingly, Appellant is not entitled to relief on this issue.

Appellant next argues that trial court erred in sentencing her both under Subsections 3802(d)(1)(iii) and 3802(d)(2) because her sentences should have merged. We disagree.

Appellant's merger claim implicates the legality of sentence and thus our standard of review is *de novo* and the scope of review is plenary. *See* *Commonwealth v. Collins*, 764 A.2d 1056, 1057 n.1 (Pa. 2001).

> Section 9765 of the Sentencing Code provides:
>
> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765. Merger, therefore, is appropriate only when two distinct criteria are satisfied: (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the offenses are included within the statutory elements of the other. "[T]he plain language of Section 9765 precludes courts from merging sentences when each offense contains a

statutory element that the other does not."[4] ***Commonwealth v. Raven***, 97 A.3d 1244, 1250 (Pa. Super. 2014). This rule applies irrespective of whether the offenses are codified in different statutes or in different subsections of the same statute. ***See id.*** at 1251-52 (different statutes); ***Commonwealth v. Rhoades***, 8 A.3d 912, 918 (Pa. Super. 2010) (different subsections of the same statute).

Subsection 3802(d)(1)(iii) provides:

An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1) There is in the individual's blood any amount of a:

(i) Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act;

(ii) Schedule II or Schedule III controlled substance, as defined in The Controlled Substance, Drug, Device and Cosmetic Act, which has not been medically prescribed for the individual; or

(iii) metabolite of a substance under subparagraph (i) or (ii).

---

[4] To the extent Appellant relies upon ***Commonwealth v. Williams***, 871 A.2d 254 (Pa. Super. 2005) for the proposition that Subsection 3802(d)(1)(iii) and Subsection 3802(d)(2) merge for sentencing purposes, such reliance is misplaced because ***Williams*** is distinguishable from the instant case. In ***Williams***, we concluded that Subsection 3731(a)(1) and (a)(4) of the predecessor version of the DUI statute represented an alternative basis for finding culpability for a single criminal act. ***Williams*** involved DUI charges stemming from consumption of alcohol. Here, Appellant's crime involved a controlled substance, *i.e.*, drugs, which can vary in form and substance.

75 Pa.C.S.A. § 3802(d)(1) (footnote omitted). Subsection 3802(d)(2) provides:

> An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> . . . .
>
> (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d)(2).

Each of these subsections contains an element that the other does not. Subsection 3802(d)(1)(iii) requires proof that the defendant has any amount of a Schedule I, II or III controlled substance in his or her blood. Subsection 3802(d)(2) requires proof that the defendant is under the influence of a drug or combination of drugs to a degree which impairs his or her ability to safely drive, operate or be in actual physical control of the movement of his or her vehicle. Given these disparate elements, the Commonwealth can prove a violation of one subsection without proving a violation of the other. If the Commonwealth proves that the defendant has any amount of Schedule I, II or III controlled substance in his or her blood but fails to prove that he or she was under the influence, this will sustain a Subsection 3802(d)(1)(iii) violation but not a Subsection 3802(d)(2) violation. On the other hand, if the Commonwealth proves that the defendant is under the influence of a non-Schedule I, II, or III drug to a degree that impairs his or her ability to safely drive his or her vehicle, this will result in a Subsection 3802(d)(2)

violation but not a Subsection 3802(d)(1)(iii) violation. Accordingly, the trial court did not err in refusing to merge Appellant's Subsection 3802(d)(1)(iii) violation with his Subsection 3802(d)(2) violation. **See Raven**, **supra** and **Rhoades**, **supra**.

In sum, we dispose of Appellant's sufficiency of evidence claim based on the reasons outlined in the trial court's December 21, 2015 opinion. We direct that a copy of the trial court's December 21, 2015 opinion be attached to any future filings in this case. We also conclude that Appellant is not entitled to relief on the merger issue.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/19/2016

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CRIMINAL TRIAL DIVISION**

| | |
|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** : | **CP-51-CR-0007923-2014** |
| **FILED** : | |
| v. : | |
| DEC 21 2015 : | |
| MIA GROOMS Criminal Appeals Unit : | **SUPERIOR COURT** |
| First Judicial District of PA | **NO. 2305 EDA 2015** |

## OPINION

THOMAS STREET, J.                                                    December 9, 2015

## I.   OVERVIEW AND PROCEDURAL HISTORY

This is an appeal by the Defendant, Mia Grooms, of this court's Judgment of Sentence

finding the Defendant guilty of Driving Under the Influence.  On October 16, 2011, Philadelphia

Police Officers encountered the Defendant at the 2200 block of West Ontario Street at 1:45 a.m.

The Defendant's vehicle was facing the wrong direction in a one-way street and blocking traffic.

The Defendant did not cooperate with officers and showed signs of intoxication.  The Defendant

was arrested, taken into custody, and later charged with Driving Under the Influence (DUI):

General Impairment/Incapable of Driving Safely- First Offense,[1] Driving Under the Influence

(DUI): Controlled Substance or Metabolite First Offense,[2] Driving Under the Influence:

Controlled Substance- Impaired Ability – First Offense,[3] and Driving Under the Influence:

Controlled Substance- Combination of Alcohol/Drugs- First Offense.[4]

CP-51-CR-0007923-2014 Comm. v. Grooms, Mia
Opinion



7385093831

---

[1] 75 Pa. C.S. § 3802 §§ A1
[2] 75 Pa. C.S. § 3802 §§ D1
[3] 75 Pa. C.S. § 3802 §§ D2
[4] 75 Pa. C.S. § 3802 §§ D3

On March 4, 2015, the Defendant filed a Motion to Dismiss. On the same day, this court held a hearing on the matter and at the conclusion of the hearing denied the Defendant's Motion Motion to Dismiss. A non-jury trial was held at which the Defendant was found guilty of Driving Under the Influence (DUI): Controlled Substance or Metabolite First Offense[5] and Driving Under the Influence: Controlled Substance- Impaired Ability – First Offense.[6] Sentencing was deferred pending a CRN and Pre-Sentence Investigation. On July 9, 2015, the Defendant was sentenced to one (1) to two (2) years of incarceration at a state correctional institution for Driving Under the Influence (DUI): Controlled Substance or Metabolite-First Offense[7] and two (2) years of reporting probation for Driving Under the Influence (DUI): Controlled Substance Impaired Ability- First Offense[8] to run consecutively with credit for time served. The Defendant was also deemed RRRI eligible at nine (9) months.

On July 20, 2015, the Defendant filed a Post-Sentence Motion. On July 23, 2015, the Defendant filed a Notice of Appeal to the Superior Court. On August 14, 2015, this court denied the Defendant's Post-Sentence Motion without a hearing. On September 14, 2015, after notes of testimony were made available, this court ordered the Defendant to file a Concise Statement of Errors Complained of on Appeal pursuant to Pa. R.A.P. 1925(b) within twenty-one (21) days. On October 5, 2015, the Defendant filed a Concise Statement of Errors.

## II.  FACTUAL HISTORY

Inspector David Bellamy, currently assigned to audits and inspections, testified that on October 16, 2011, at approximately 1:45 a.m. he was on duty as a Philadelphia police officer.

---

[5] 75 Pa. C.S. § 3802 §§ D1
[6] 75 Pa. C.S. § 3802 §§ D2
[7] 75 Pa. C.S. § 3802 §§ D1
[8] 75 Pa. C.S. § 3802 §§ D2

(N.T. 3/4/15 p. 28).[9] Inspector Bellamy stated that he was Captain of the 18th District at that time and was going to do an unannounced compliance check at 1:55 a.m. *Id.* While en route to that check, Inspector Bellamy came to the area of 2200 West Ontario Street in Philadelphia, Pennsylvania. *Id.* At that time, he encountered a woman whom he identified as the Defendant. *Id.* Inspector Bellamy observed a traffic jam caused by the Defendant's white Mitsubishi Galant blocking eastbound traffic at the 2200 block of Ontario Street. (N.T. 3/4/15 p. 28). He explained that Ontario is a one-way street and that three (3) or four (4) cars ahead of the Defendant were trying to get by but they could not because the street was too small and the Defendant's vehicle was blocking traffic. (N.T. 3/4/15 pp. 28-29).

Inspector Bellamy stated that after he noticed the Defendant's vehicle blocking traffic he went to her car and observed the situation more closely. (N.T. 3/4/15 p. 29). "I saw the [Defendant] got out of the car, and she was stumbling and kind of hazy and everything like that, and I suspected her of being inebriated." *Id.* Inspector Bellamy asked for the Defendant's identification but she did not fully cooperate. *Id.* He stated that the Defendant took a little plastic cup inside of the vehicle and poured the liquid out underneath her car. *Id.* He further stated that she was "kind of out of it" and he called for backup. *Id.* Backup arrived three (3) to four (4) minutes later and Inspector Bellamy remained on the scene for about ten (10) to fifteen (15) minutes to explain to the arriving officers what he had observed. (N.T. 3/4/15 pp. 29-30).

Inspector Bellamy testified that he has been a Philadelphia police officer for twenty (20) years and has made numerous arrests for Driving Under the Influence (DUI), alcohol or other substance, but less than a hundred (100) times. (N.T. 3/4/15 p. 30). He has observed intoxicated individuals hundreds of times. *Id.* Inspector Bellamy stated that the Defendant was outside of

---

[9] All references to the record refer to the notes of testimony for the motions hearing and non-jury trial recorded on March 4, 2015.

her vehicle and was not fully cooperating. *Id.* "She was stumbling a little bit and her eyes were glassy, and just not cooperating at all. The individuals [in the cars] were just blowing [their horns] and she was outside the vehicle." *Id.*

On cross-examination, Inspector Bellamy reiterated that he was at the 2200 block of Ontario Street at 1:45 a.m. on the date in question. (N.T. 3/4/15 p. 31). He explained that there was a traffic jam on Ontario, a one-way street, and that the Defendant's car was going in the opposite direction of traffic while other vehicles were trying to get around her car. *Id.* Inspector Bellamy noticed this on his right-hand side as he traveled southbound on 22nd Street. *Id.* Inspector Bellamy stated that when he first saw the Defendant she was outside of her car stumbling around the driver's area with the door open while other drivers were honking at her. (N.T. 3/4/15 p. 32). He clarified that the Defendant's car was stopped, she was not in the car, but rather standing and stumbling around the car when he pulled up. *Id.*

Additionally, Inspector Bellamy testified that there was no one else in the white Mitsubishi and no one with him at the time. *Id.* Inspector Bellamy stated that there were approximately two (2) or three (3) other cars standing and blowing their horn in the direction where Ontario Street runs eastbound. (N.T. 3/4/15 p. 33). He testified that he observed the Defendant for about thirty (30) or forty (40) seconds prior to initiating an investigation as he was trying to notice what the commotion was and then saw the car being driven or parked the wrong way. *Id.* Inspector Bellamy clarified that he did not actually see the Defendant drive because the car was stopped. *Id.*

On redirect examination, Inspector Bellamy testified that the vehicle was running and the keys were in the ignition. (N.T. 3/4/15 pp. 33-34). Inspector Bellamy stated that the Defendant

4

went back into the vehicle and came out with a beverage. (N.T. 3/4/15 p. 34). She then poured the beverage out underneath the vehicle and would not cooperate with Inspector Bellamy. *Id.*

On recross-examination, Inspector Bellamy stated in more detail that the Defendant went back into her vehicle and retrieved a beverage that was in a plastic cup from the middle console. (N.T. 3/4/15 p. 34). When asked whether the beverage was on the driver's side, Inspector Bellamy stated no, but that "the driver had full control where she got it." (N.T. 3/4/15 p. 35). When asked whether the Defendant took the keys out and handed them to the Inspector, he stated that he could not remember. *Id.* When asked whether he could remember the Defendant, Inspector Bellamy testified in the affirmative. *Id.* He stated that she had a short haircut, brown skin, and was a female. *Id.* Inspector Bellamy responded that he could not remember how many individuals he had arrested for DUI since the Defendant's arrest. (N.T. 3/4/15 p. 36).

Philadelphia Police Officer Michael McCormick, assigned to the 39th District, testified that on October 16, 2011 at approximately 2 a.m. he was on duty responding to a request for backup in the area of 2200 West Ontario Street. (N.T. 3/4/15 p. 38). Officer McCormick identified the Defendant in court and continued:

> I responded to a backup call over [the] radio from now Inspector Bellamy, asking for backup in reference to a car stop he had, which was located at 2200 West Ontario. I was the driver. Myself and my partner, Officer Giacomelli, pulled up in our patrol car and observed the defendant sitting in her vehicle, headed westbound.

(N.T. 3/4/15 pp. 38-39). Officer McCormick stated that the Defendant was facing westbound and blocking traffic in a one-way eastbound street. (N.T. 3/4/15 p. 39). He also stated that Inspector Bellamy's vehicle was in front of her vehicle with the lights on. *Id.* Officer McCormick testified that:

> At that time we approached the female. She got out of the car, took—I forget if it was a Styrofoam cup or one of the red solo

5

cups—and tossed the contents onto the street. I asked her to step out. She was basically nonverbal, could barely stand, had trouble—swaying or sagging, however you want to call it, and she was – we had to direct her to lean up against another vehicle to keep her from falling on the ground.

(N.T. 3/4/15 pp. 39-40). When asked what happened next, Officer McCormick stated:

We asked her if she knew where she was, if she had a driver's license, whose vehicle it was; registration, insurance, paperwork for the vehicle in reference to the car stop. She had a blank stare on her face, glassy eyes. Her lips were moving and nothing was coming out. She didn't –she was not able to say where she was, how she got there. She was nonverbal until we actually wound up—we believed she was under the influence. We placed her in handcuffs and put her in the back of the wagon. She only became verbal after we went down to the PDU to have her processed.

(N.T. 3/4/15 p. 40). Officer McCormick first observed the Defendant in the driver's seat of her vehicle when he arrived on the scene with the vehicle running. *Id.* At the Police Detention Unit (PDU), Officer McCormick stated that they passed the Defendant to the Accident Investigation District (AID) officer and went through the intake process where she was searched by staff. (N.T. 3/4/15 pp. 40-41). Officer McCormick also stated that when she was asked basic questions regarding medical, she was barely able to answer the questions. (N.T. 3/4/15 p. 41).

Philadelphia Police Officer William Lackman, assigned to the AID, testified that on October 16, 2011 he was on duty at approximately 3:00 a.m. when he encountered the Defendant. (N.T. 3/4/15 pp. 42-43). He stated that he was working at police headquarters on 8th and Race Street in the PDU in the basement of the building. (N.T. 3/4/15 p. 43). Officer Lackman explained that there is a DUI testing room inside the detention unit where he was assigned that night. *Id.* The Defendant was brought to Officer Lackman at 3:16 a.m. that morning. *Id.* When she arrived, the Defendant was in custody with two police officers standing with her at Officer Lackman's door. *Id.* He stated that he gave the Defendant the standard

6

warnings for those arrested for DUI in the City and County of Philadelphia. (N.T. 3/4/15 pp. 43-44). He requested that she submit to a blood test and gave her information that related to penalties for anyone that refused, which included driver's license suspension and appropriate sentencing if convicted in a criminal court. *Id.* Ultimately, the Defendant chose to take the blood test. (N.T. 3/4/15 p. 44).

Officer Lackman stated that the blood was drawn at 3:26 a.m. by a nurse in his presence that morning. (N.T. 3/4/15 p. 45). Two (2) tubes of blood were taken from the Defendant and secured on Philadelphia Property Receipt No. 3010201. *Id.* The appropriate copies of the property receipt to the DrugScan collection kit were attached to the blood and stored in a refrigerator for blood sample storage at headquarters on 26th Street and Masters Street. *Id.* Those samples were later sent to DrugScan for analysis. *Id.* Officer Lackman stated that he did not remember having much of a conversation with the Defendant. *Id.*

Richard Cohn, forensic toxicologist and pharmacologist, with DrugScan, Incorporated testified that he has been employed by DrugScan for thirty (30) years. (N.T. 3/4/15 p. 48). Mr. Cohn stated that for twenty-three (23) of those years he was the laboratory director pursuant to the Commonwealth Bureau of Laboratory Requirements, as published in the Pennsylvania Bulletin, and also as the (RP) or responsible person pursuant to the National Laboratory Certification Program under the Substance Abuse and Mental Health Services Administration. For the last five (5) to six (6) years, Mr. Cohn has served only as a forensic toxicologist. (N.T. 3/4/15 p. 48). Defense counsel stipulated to Mr. Cohn's expertise. *Id.*

Mr. Cohn testified that he was working as a forensic toxicologist in November 2011 and identified Commonwealth exhibit four (C-4) from DrugScan as a forensic toxicology report that he authored on November 17, 2011 regarding the Defendant. (N.T. 3/4/15 p. 49). Mr. Cohn

7

explained that the results of the report indicated the presence of seven (7) milligrams of ethyl alcohol per milliliter of blood, or a .07 percent, and also a presence of phencyclidine or PCP at 63 nanograms per milliliter of blood. (N.T. 3/4/15 pp. 49-50). He stated that these were significant positive findings. *Id.* The Commonwealth marked and moved exhibits C1 through C4 into evidence.

## III. ISSUE

In the Pa. R.A.P. 1925(b) Concise Statement of Errors Complained of on Appeal, the Defendant identifies the following issue:

1. The evidence was insufficient to sustain convictions for driving under the influence where the police officer did not observe appellant operate a motor vehicle. When the officer first observed appellant she was outside of the vehicle. She went in the vehicle retrieved a cup and poured a liquid out underneath the car. The police never ascertained who the driver of the vehicle was and no evidence was introduced linking appellant as the driver, owner or operator of the vehicle.

## IV. STANDARD OF REVIEW

When examining the sufficiency of the evidence, the standard is well settled. In reviewing a challenge to the sufficiency of evidence, a court must "determine whether the evidence, and all reasonable inferences deductible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all the elements of the offense beyond a reasonable doubt." *Commonwealth v. Reynolds*, 835 A.2d 720, 725-726 (Pa. Super 2002). In making this assessment, the reviewing court may not weigh the evidence or substitute its own judgment for the fact-finder's judgment. *Id.* at 726. In other words, "the fact-finder resolves any doubt about the defendant's guilt unless no probability of fact could be drawn from the evidence because it was so weak and inconclusive." *Id.* The Commonwealth need not preclude every possibility of innocence in establishing the facts and circumstances. *Id.*

8

A challenge to the sufficiency of evidence is a question of law. *Commonwealth v. Heater*, 2006 Pa. Super 86, 15 (Pa. Super 2006). A reviewing court may not weigh the evidence or substitute its own judgment for that of the fact-finder, who is free to believe all, part, or none of the evidence. *Commonwealth v. Adams*, 2005 Pa. Super 296, 882 A.2d. 496, 498-99 (Pa. Super. 2005). The Commonwealth may satisfy its burden of proof entirely by circumstantial evidence. *Id.* at 499. "If the record contains support for the verdict, it may not be disturbed." *Id.*

## V. DISCUSSION

The Defendant argues that the evidence was insufficient to sustain her convictions for Driving Under the Influence where the police officers did not observe the Defendant operate a motor vehicle. The Defendant further claims that no evidence was introduced linking her as the driver, owner, or operator of the vehicle. This court disagrees.

§ 3802. **Driving under influence of alcohol or controlled substance**

**(d) Controlled substances.**--An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1) There is in the individual's blood any amount of a:

(i)  Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64),[1] known as The Controlled Substance, Drug, Device and Cosmetic Act;

(ii)  Schedule II or Schedule III controlled substance, as defined in The Controlled Substance, Drug, Device and Cosmetic Act, which has not been medically prescribed for the individual; or

(iii)  (iii) metabolite of a substance under subparagraph (i) or (ii).

9

> (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa. C.S.A. § 3802. In order to convict a defendant of driving while under the influence to a degree that rendered him incapable of safe driving, the Commonwealth must show that the defendant was the operator of a motor vehicle, and that while operating the vehicle, the defendant was under the influence to such a degree as to render him incapable of safe driving; to establish the second element, it must be shown that alcohol or other substance had substantially impaired the normal mental and physical faculties required to safely operate the vehicle. *Commonwealth v. Palmer*, 751 A.2d 223 (Pa. Super. 2000).

The term "operate" in driving under the influence statute requires evidence of actual physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, but not evidence that the vehicle was in motion. *Commonwealth v. Williams*, 871 A.2d 254 (Pa. Super. 2005). A determination of actual physical control of a vehicle, as required to sustain conviction for driving under the (DUI), is based upon the totality of the circumstances. *Commonwealth v. Williams*, 941 A.2d 14 (Pa. Super. 2008); *Commonwealth v. Brotherson*, 888 A.2d 901 (Pa. Super. 2005).

A combination of the following factors is required in determining whether a person had actual physical control of an automobile to sustain a conviction for driving under the influence: the motor running, the location of the vehicle, and additional evidence showing that the defendant had driven the vehicle. *Commonwealth v. Woodruff*, 447 Pa.Super. 222, 668 A.2d 1158, 1161 (1995). "In a majority of cases, the suspect location of the vehicle, which supports an inference that it was driven, is a key factor in a finding of actual control." *Brotherson*, 888 A.2d at 905 (*citing Commonwealth v. Bobotas*, 588 A.2d 518, 521 (Pa.Super.1991) (finding

10

actual physical control when the defendant was found parked in an alley, where he had pulled over on the way home with the motor running); and *Commonwealth v. Crum*, 523 A.2d 799, 800 (Pa.Super. 1987) (finding actual physical control where defendant was found sleeping in his parked car, along the side of the road, with the headlights on and the motor running).

Here, the Commonwealth presented overwhelming evidence that was sufficient to sustain the Defendant's DUI convictions and support a finding that she had actual physical control of the vehicle while under the influence of a drug or a combination of drugs. The Commonwealth introduced testimony that Inspector Bellamy discovered the Defendant's vehicle facing the opposite direction in a one-way street and blocking traffic at 1:45 a.m. on October 16, 2011. (N.T. 3/4/15 pp. 28-29, 39-40). The engine of the vehicle was running and the keys were in the ignition. (N.T. 3/4/15 pp. 33-34, 40). The credible testimony offered by Inspector Bellamy and Officer McCormick also suggested that the Defendant was visibly intoxicated. (N.T. 3/4/15 pp. 28-29, 32, 39-41). She had glassy eyes, stumbled, had to be leaned up against a vehicle to keep from falling, and failed to cooperate and communicate with officers. *Id.*

The Defendant also reached inside of the vehicle, grabbed a cup from the center console, and dumped its liquid contents under the car in the officers' presence. (N.T. 3/4/15 pp. 29, 34, 39-40). Moreover, the Defendant sat on the driver's side when she was asked to step out of her vehicle and the driver's side door was open in the precise location where she was initially discovered standing and stumbling. (N.T. 3/4/15 pp. 32, 38-39). No other person was present in or near the Defendant's vehicle. (N.T. 3/4/15 p. 33). Richard Cohn, forensic toxicologist and pharmacologist, confirmed that the Defendant's BAC was .07% and that she had 63 nanograms per milliliter of PCP in her blood, a significant positive finding. (N.T. 3/4/15 pp. 44-45). As such, the vehicle's location in the middle of a one-way street facing the wrong direction and the

11

Defendant's intoxicated behavior in and around the driver's side of the running vehicle supports a finding that the Defendant was the driver of that vehicle.

## VI.    CONCLUSION

For all of these reasons, this court's decision should be affirmed.

**BY THE COURT:**

SIERRA THOMAS STREET, J.

Dated: December 21st, 2015