J-S29030-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GEORGE FRASER, SR. | : | |
| | : | |
| Appellant | : | No. 2140 EDA 2018 |

Appeal from the Judgment of Sentence Entered July 6, 2018
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0002402-2017

BEFORE:  BENDER, P.J.E., LAZARUS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY LAZARUS, J.:                    **FILED JULY 01, 2019**

George Fraser, Sr., appeals from the judgment of sentence, entered in the Court of Common Pleas of Chester County, after a jury convicted him of simple assault[1] and terroristic threats[2] and the trial court, sitting without a jury, found him guilty of two counts of the summary offense of harassment.[3] Upon careful review, we affirm.

On the evening of July 15, 2017, George Fraser, Jr., arrived home from a shopping trip to Target with his twin brother, Jeremy, to find the rest of his family—his mother, Melissa, his other brother, Alex, and his father, Appellant—engaged in an argument over Appellant's abuse of alcohol.  The

---

[1] 18 Pa.C.S.A. § 2701(a)(3).

[2] 18 Pa.C.S.A. § 2706(a)(1).

[3] 18 Pa.C.S.A. § 2709(a)(1).

entire family had arrived home from vacation earlier in the day, at approximately 1:00 p.m., and Appellant had drunk between five and ten beers since that time. N.T. Trial, 5/17/18, at 41-42. The previous night, Appellant had consumed approximately 27 beers. *Id.* at 42. The family sought to convince Appellant to seek help for his drinking. During the intervention, Appellant repeatedly tried to drown out his family by turning up the volume on the television. *Id.* at 9. The argument began to escalate when George, Jr., unplugged the television and Jeremy took a bottle of beer away from Appellant and poured it down the kitchen sink. *Id.* at 10. At some point, the entire family ended up in the kitchen, *id.* at 11, where Appellant punched Jeremy in the face. *Id.* at 73.

During the fracas in the kitchen, Melissa became very upset and threatened to commit suicide by overdosing on medication. *Id.* at 11. After George, Jr., took a bottle of pills away from her, Melissa fled the kitchen and ran to the master bedroom, which she shared with Appellant. *Id.* George, Jr., followed her, believing that she would attempt to ingest additional pills she kept in the bedroom. *Id.* After removing all medicine from the bedroom and attempting to calm his mother, George, Jr., walked out into the hallway toward the kitchen. At that point, George, Jr., heard Appellant yell "I'm going to end this" and run toward the bedroom, near where George, Jr., was standing. *Id.* at 12-13. George, Jr., took those words as a threat, because Appellant kept guns and ammunition in the master bedroom. *Id.* at 13.

Anticipating that Appellant would attempt to retrieve a weapon from his desk in the bedroom, George, Jr., ran ahead to block Appellant's access to the desk. *Id.* When Appellant realized he could not get past George, Jr., to access the desk, he reached into a nearby armoire, where he stored additional weapons and ammunition. *Id.* at 14. Appellant retrieved a gun from the armoire, unholstered it, and pointed it at George, Jr.'s chest. *Id.* at 14-16. Although George, Jr., did not know if the gun was loaded or not, he had been taught "to treat all guns as if they were loaded, not to point them, not to play around with them." *Id.* at 16. George, Jr., testified that he was "terrified. [He] thought [his] life was in danger, [his] mom, [his] brothers' lives were in danger." *Id.* When Appellant aimed the gun at George, Jr., he stated "I'm going to kill you, you're dead." *Id.* at 20, 74-75. At some point after Appellant pointed the gun at his son, George, Jr., reached into a nightstand, retrieved another gun, and aimed it at Appellant. *Id.* at 17. Melissa and Jeremy, who had entered the room during the confrontation between Appellant and George, Jr., were finally able to disarm Appellant. George, Jr., contacted 911, at which time the operator instructed him to leave the home. *Id.* at 22. Officer Robert Edwards of the West Goshen Township Police Department arrived shortly thereafter to find George, Jr., and Melissa in the front yard of the residence, crying hysterically. N.T. Trial, 5/18/18, at 91.

Appellant was arrested and charged with four counts each of terroristic threats, recklessly endangering another person, simple assault, and harassment. The Commonwealth subsequently withdrew all charges except

- 3 -

one count each of terroristic threats and simple assault, plus four summary counts of harassment. After a trial, held on May 17 and 18, 2018, a jury found Appellant guilty of terroristic threats and simple assault. The trial court found Appellant guilty of two counts of harassment as to George, Jr., and Jeremy and not guilty of the counts related to Melissa and Alex. On July 6, 2018, the court sentenced Appellant to 8½ to 23 months' incarceration followed by six months of probation. Appellant filed a timely appeal, followed by a court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). He raises the following issues for our review:

> 1. Did the trial court err in entering a judgment of guilt on the charge of simple assault where the Commonwealth failed to prove beyond a reasonable doubt that [Fraser] acted with the necessary intent?
>
> 2. Did the trial court err in allowing the Commonwealth to elicit testimony about a prior unrelated offense, where that evidence was irrelevant and unfairly prejudicial?

Brief of Appellant, at 6 (unnecessary capitalization omitted).

Appellant first challenges the sufficiency of the evidence supporting his conviction for simple assault.

> "The determination of whether sufficient evidence exists to support the verdict is a question of law; accordingly, our standard of review is de novo and our scope of review is plenary." **Commonwealth v. Johnson**, [] 160 A.3d 127, 136 ([Pa.] 2017) (citation omitted). In assessing Appellant's sufficiency challenge, we must determine "whether viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth], there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." **Commonwealth v. Grays**, 167 A.3d 793, 806 (Pa. Super. 2017) (citation omitted). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. . . . [T]he finder

of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence." **Commonwealth v. Waugaman**, 167 A.3d 153, 155–56 (Pa. Super. 2017) (citation omitted).

**Commonwealth v. Edwards**, 177 A.3d 963, 969–70 (Pa. Super. 2018).

A person commits the offense of simple assault if he "attempts by physical menace to put another in fear of imminent serious bodily injury." 18 Pa.C.S.A. § 2701(a)(3). "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. For a conviction of simple assault by physical menace, "[t]he elements which must be proven are intentionally placing another in fear of imminent serious bodily injury through the use of menacing or frightening activity." **Commonwealth v. Reynolds**, 835 A.2d 720, 726 (Pa. Super. 2003). Intent may be proven by circumstantial evidence and may be inferred from the defendant's conduct under the attendant circumstances." **Id.**

Appellant argues that the Commonwealth's evidence was contradictory and, therefore, "allowed the jury to infer two equally plausible scenarios." Brief of Appellant, at 16. In support of that assertion, Appellant points to inconsistencies between statements made by George, Jr. and Melissa to police on the night of the incident and their testimony at trial. Appellant also cites his own testimony claiming that he only brandished a weapon after George, Jr., first pulled a gun on him.

Appellant's arguments are more properly characterized as challenging the weight, not the sufficiency, of the evidence, as they attack the credibility determinations made by the jury. *See Commonwealth v. W.H.M., Jr.*, 932 A.2d 155, 160 (Pa. Super. 2007) (claim that jury should have believed appellant's version of event rather than that of victim goes to weight, not sufficiency of evidence); *Commonwealth v. Wilson*, 825 A.2d 710, 713–14 (Pa. Super. 2003) (review of sufficiency of evidence does not include assessment of credibility of testimony; such claim goes to weight of evidence); *Commonwealth v. Gaskins*, 692 A.2d 224, 227 (Pa. Super. 1997) (credibility determinations are made by finder of fact and challenges to those determinations go to weight, not sufficiency of evidence). In order to preserve a challenge to the weight of the evidence, the claim must first be raised in the trial court. *Commonwealth v. Wilson*, 825 A.2d 710, 714 (Pa. Super. 2003). Because Appellant failed to properly preserve a weight claim below, we find it to be waived.[4] Pa.R.Crim.P. 607(A).

Appellant's second and final claim relates to the trial court's admission of evidence concerning his arrest for driving under the influence of alcohol ("DUI") on the evening prior to the day of the incident in question. The

---

[4] Even if Appellant had properly argued his sufficiency claim, he would be entitled to no relief. The evidence adduced at trial, viewed in the light most favorable to the Commonwealth, was more than sufficient to demonstrate that Appellant, through his words and actions, placed George, Jr., in fear for his life.

applicable standard of review for a challenge to the admissibility of evidence is well settled.

> The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of its discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

***Commonwealth v. Sherwood***, 982 A.2d 483, 495 (Pa. 2009) (citation and quotation marks omitted).

Pursuant to the Pennsylvania Rules of Evidence, all relevant evidence is admissible at trial, except to the extent otherwise provided by law. Pa.R.E. 402. Evidence is relevant if it has any tendency to make a fact that is of consequence in determining the action more or less probable than it would be without the evidence. Pa.R.E. 401. A court may exclude relevant evidence if its probative value is outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Generally, evidence of a prior crime, wrong, or other act is not admissible to prove a person's character to show that, on a particular occasion, the person acted in accordance with that character. Pa.R.E. 404(b)(1). However, evidence that might otherwise be inadmissible may be introduced for some other purpose, particularly where Appellant's own testimony "opens the door" for such evidence to be used for impeachment

purposes. ***Commonwealth v. Murphy***, 182 A.3d 1002, 1005 (Pa. Super. 2018). ***See*** Pa.R.E. 607(b) ("The credibility of a witness may be impeached by any evidence relevant to that issue, except as otherwise provided by statute or these rules."). "A litigant opens the door to inadmissible evidence by presenting proof that creates a false impression refuted by the otherwise prohibited evidence." ***Murphy***, 182 A.3d at 1005, quoting ***Commonwealth v. Nypaver***, 69 A.3d 708, 716–17 (Pa. Super. 2013) (citations omitted).

At trial, the Commonwealth sought to demonstrate that Appellant had been drinking heavily since the day prior to the incident in question, which led to the intervention by his family, during which the incident in question occurred. The trial court addressed this issue as follows:

> Prior to the trial commencing, the parties agreed that Appellant's DUI arrest from the evening of July 14th, the previous day, would not be addressed during the trial. It was determined that facts related to Appellant's drinking the day before could be properly referenced in a general manner to allow the jury to examine the events of July 15th in context. . . . A review of the Commonwealth's questions to its witnesses confirms that questions that would elicit a response referencing the DUI arrest were not asked. Nonetheless, testimony related to the DUI arrest was volunteered by Appellant during [cross-examination.] . . .
>
> [Specifically,] the jury had heard from the Commonwealth's witnesses that Appellant was drinking on July 14th. Appellant denied this fact. In an attempt to impeach Appellant on that denial, the Commonwealth appropriately asked if the reason he did not drive on July 15th was because of his drinking the prior day. Appellant denied that was the reason for his not driving. Without prompting[,] and in an attempt to bolster his credibility regarding his version of the events of July 14th, Appellant supplemented his answer and stated that the reason for his not driving was because of a driving citation that suspended his license. Once Appellant [made] this statement to bolster his own

- 8 -

credibility by implying that the [Commonwealth's] witnesses were not truthful as to his drinking on July 14th, the Commonwealth [was] entitled to an opportunity to impeach Appellant and question him about the citation that Appellant claim[ed] prevented him from driving.

Trial Court Opinion, 11/7/18, at 10, 12-13 (internal citations omitted).

We agree with the trial court that, once Appellant "opened the door" by spontaneously testifying about his driving citation in an attempt to refute prior testimony that he had been drinking on July 14, the Commonwealth was entitled to question him as to the nature of that citation in order to impeach Appellant's testimony that he had not been drinking on July 14, the date he received the citation. We can discern no abuse of discretion on the part of the trial court in concluding that the probative value of the evidence outweighed the danger of any unfair prejudice, especially in light of the fact that the trial court instructed the jury not to consider the evidence "as anything other than the part of the factual basis of the events." *Id.* at 12, quoting N.T. Trial, 5/18/18, at 140-41. ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1184 (Pa. 2011) ("The law presumes that the jury will follow the instructions of the court."). Accordingly, Appellant is entitled to no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/1/19

- 9 -